DENTSPLY INTERNATIONAL, INC., Plaintiff,

v.

CENTRIX, INC., Defendant.

Civ. A. No. 82–174.

United States District Court, D. Delaware.

Dec. 20, 1982.

Henry N. Herndon, Jr. and Clarkson P. Collins, Jr., of Morris, James, Hitchens & Williams, Wilmington, Del., and John J. Mackiewicz, Albert W. Preston, Jr., John W. Caldwell and John Jamieson of Woodcock, Washburn, Kurtz, Mackiewicz & Norris, Philadelphia, Pa., of counsel, for plaintiff.

Arthur G. Connolly, Jr. of Connolly, Bove & Lodge, Wilmington, Del., and Arthur T. Fattibene, Southport, Conn., of counsel, for defendant.

## MEMORANDUM OPINION

LATCHUM, Chief Judge.

This is an action, brought pursuant to 28 U.S.C. §§ 1338 and 2201, by Dentsply International Inc. ("Dentsply"), for a declaratory judgment of noninfringement, invalidity and unenforceability of three patents, which are registered as United States Patents 3,581,399 ("399 patent"), 3,900,954 ("954 patent"), and 4,198,756 ("756 patent"). Defendant Centrix, Inc. ("Centrix") has moved to dismiss this action, pursuant to Federal Rule of Civil Procedure 12(b)(1), (2) and (7), on the ground that Dentsply has failed to join a necessary party, namely the patent owner. In the alternative, Centrix seeks transfer of this case, pursuant to 28 U.S.C. § 1404(a), to the District Court of Connecticut, where a related action is pending.[1] In addition, Centrix contends that no case or controversy exists as to the 954 patent.

The patents in suit involve dental syringe construction. The 399 patent, 954 patent, and 756 patent respectively cover the products known to the market as the Mark I syringe, Mark II syringe, and Mark III syringe. These three products were invented by Dr. William B. Dragan, a practicing dentist working and residing in Connecticut. At present, Dr. Dragan owns the 954 and 756 patents. He has granted oral licenses for the manufacture and sale of the dental syringes covered by the 954 and 756 patents to Centrix. The 399 patent has been assigned to Centrix.[2]

The nature of these oral licensing agreements are most indefinite on the present record. This is due in part to Dr. Dragan's relationship with Centrix. Centrix is a small, closely held corporation, with only 2

---

1. *Dragan v. L.D. Caulk Co., A Division of Dentsply International, Inc.,* Docket No. B82–234 (D.Conn.1982). In this suit, Dr. Dragan is suing for infringement on the 756 patent.

2. The assignment of the 399 patent has been duly recorded in the assignment branch of the U.S. Patent and Trademark Office.

permanent employees and a president, incorporated in Delaware with its principal place of business in Connecticut. (Docket Item ["D.I."] 24, at 12.) It "was initially organized as a corporation in about 1970 for the express purpose of developing the market and selling the dental syringe which was invented by Dr. William B. Dragan." (D.I. 13, at A–16.) At present, there are approximately 19 shareholders of Centrix. (*Id.*) Dr. Dragan is a member of the board of directors of Centrix and currently serves as secretary and treasurer of the corporation (D.I. 18A, at A24), although he has stated that he does "not partake in or control the day to day business operations of Centrix." (D.I. 13, at A–2.) Dr. Dragan owns approximately 30% of the outstanding shares of Centrix. (*Id.*) Dr. Dragan also provides Centrix with his new product inventions. This is based upon "a rough understanding, but it's a gentleman's agreement," (D.I. 18A at A28) that is totally oral, (*id.* at A29). If Dr. Dragan develops a product, he "offer[s] it to Centrix. They evaluate it," (*id.* at A29); "[i]f they felt it was a commercially viable product, they'd use it," (*id.* at A30), "and would take care of [Dragan's] expenses in obtaining [the] patent," and Dragan would "give them an oral license to use it." (*Id.* at A31.) Centrix compensates Dr. Dragan, "based upon an accounting of profitability relating to [Dragan's] products." (*Id.* at A33.) Dr. Dragan is apparently compensated on a weekly basis. (*Id.* at A34.) He has characterized the board of directors as "a loosely arranged group." (*Id.* at A36.) The board meets when it "feel[s] like it," but not often. (*Id.* at A36.)

This informal relationship between Dr. Dragan and Centrix explains the indefinite nature of the patent licenses. At the outset, it must be noted that the 399 patent was assigned to Centrix (which assignment was duly filed with the U.S. Patent and Customs Office), thus giving Centrix full rights in this patent. Centrix's status as to rights in the 954 or 756 patent are not quite as clear. Dr. Dragan states that these two patents have been licensed to Centrix, but that "Centrix, Inc. has no right to sue in

[his] behalf for any infringement of these patents." (D.I. 13, at A–2.) Dr. Dragan further acknowledges that these licenses were orally given without any form of writing. (D.I. 22A, at RA8.) Thus, on the present record, it is impossible to characterize the nature (exclusive or nonexclusive), or the other terms and duration of these licenses.

Dentsply's involvement with Centrix began in 1979, when Dentsply's Caulk division entered into negotiations with Centrix for a licensing agreement to permit Dentsply to use the Mark III syringe in conjunction with the dispensing of dental restorative materials produced by Caulk. Officials of Caulk and Centrix continued negotiations until the fall of 1981 but failed to reach an agreement. Subsequently, Caulk manufactured its own syringe which it displayed at the Chicago Mid-Winter Dental Products Show in February, 1982.

At the time that the licensing negotiations between Caulk and Centrix broke off, Centrix began a series of notifications to protect the Dragan patents from infringement. In a letter dated October 19, 1981, from Frank G. Symcak, the President of Centrix, to Emery Dougherty, Corporate Director of Product Development for Dentsply, Symcak warned Dougherty that disclosure made by Centrix to Dentsply during their prior negotiations were confidential and not to be utilized by Dentsply. In this respect, Symcak stated in the letter that "Centrix, therefore, will not tolerate any encroachment of its [756] patent and/or proprietary rights." (D.I. 18A, at A7.)

Subsequently, Mr. Melvin Drumm, Vice President of Marketing and Sales for Centrix, casually spoke, in the course of his business, to various customers, some of whom mentioned that Dentsply had a similar type of syringe. In response, Drumm informed these customers, in vague terms, that if they sold the Dentsply syringe, they might be subject to infringement litigation. (D.I. 18A, at A62–A70.)

Thereafter, on March 31, 1982, Symcak, writing on Centrix stationery, sent letters

to general dental equipment purchasers and suppliers, which referred to all three patents in suit, and stated that, "It has come to Centrix's attention that competitors are seeking to copy the CENTRIX Syringe and tubes and plugs, and are infringing the above identified patents [the 399, 954 and 756 patents] under which the CENTRIX syringe is being manufactured." (D.I. 18A, at A9, A18, A22.) In addition, the letter stated, "Centrix intends to diligently police its patent rights and to prosecute all known infringers and/or manufacturers who copy the CENTRIX patented procedure." (Id.)

In response to these notices, Dentsply commenced this action for declaratory judgment, contending that the 399 patent, 954 patent, and 756 patent are invalid and unenforceable and that the activity of Dentsply does not constitute infringing conduct.

Centrix first contends that there is no actual controversy as to the 954 patent and that therefore the suit should be dismissed as to this patent. In particular, Centrix argues that there is no controversy because Dentsply is not manufacturing any product which could be considered to infringe upon the 954 patent. (D.I. 12, at 9.) Dentsply counters, arguing that Centrix's letters to the trade, threatening prosecution for infringement of all three patents, constitute a legal controversy sufficient for jurisdiction.

The Supreme Court has stated that in order for there to be a justiciable "controversy," there must be "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). Moreover, the Supreme Court has stated that:

A "controversy" in this sense must be one that is appropriate for judicial determination. A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It

must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law should be upon a hypothetical state of facts. Where there is such a concrete case admitting of an immediate and definite determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages. And as it is not essential to the exercise of the judicial power than an injunction be sought, allegation that irreparable injury is threatened are not required.

*Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 463–464, 81 L.Ed. 617 (1937) (citations omitted). *See Societe de Conditionnement en Aluminium v. Hunter Engineering, Co., Inc.*, 655 F.2d 938 (C.A. 9, 1981); *Japan Gas Lighter Assoc. v. Ronson Corp.*, 257 F.Supp. 219, 237 (D.N.J.1966).

In the context of a declaratory judgment regarding the validity of a patent, one commentary has noted:

A clearcut situation of actual controversy arises from charges of infringement made against customers. The plaintiff may be "about to infringe" or "to continue to infringe." The plaintiff may have *good reason* to fear that he might be held liable for contributory infringement.

8 Deller's Walker on Patents § 628, at 110–11. In this respect, the federal courts have held that the threat of litigation or the plaintiff's "real and reasonable apprehension" of subjection to liability provides sufficient basis for a controversy in a declaratory judgment action. *Societe de Conditionnement, supra,* 655 F.2d at 944; *see Super Products Corp. v. D.P. Way Corp.*, 546 F.2d 748, 753 (C.A. 7, 1978); *Sherwood Medical Industries, Inc. v. Deknatel, Inc.*, 512 F.2d 724, 727 (C.A. 8, 1975); *Sweetheart Plastics, Inc. v. Illinois Tool Works, Inc.*, 439 F.2d 871, 874 (C.A. 1, 1971).

■ In reviewing these cases and commentary, the Court holds that on the facts presented an actual controversy exists with respect to the 954 patent. Centrix's letter to the trade warning of potential infringement of "its" patents specifically refers to the 954 patent as well as the 399 and 756 patents. (*See* D.I. 18A, at A9, A22.) Although the Dentsply product may in fact only be similar to the Mark III syringe, which is covered by the 756 patent and not the 954 patent, the Centrix letters were drafted broadly enough to lead the trade, as well as Dentsply, to believe that the manufacture of the Dentsply product infringed upon all three of the patents in suit. From Dentsply's standpoint, it was in real and reasonable apprehension that its product might infringe the three patents and thus its only recourse was to bring a declaratory judgment action. *See A.L. Smith Iron Co. v. Dickson,* 141 F.2d 3, 5, 6 (C.A. 2, 1944) (Hand, J.). For Centrix to now say that the 954 patent is inapplicable to the Dentsply syringe, after these letters warning of possible infringement have been sent out, is beside the point. In *Japan Gas Lighter Assoc.,* the Court stated that, "The Declaratory Judgment Act was designed to relieve potential defendants from the Damoclean threat of impending litigation . . . ." 257 F.Supp. at 237 (D.N.J.1966). The Court finds that in light of the language in the Centrix letters, Dentsply is still exposed to this "Damoclean threat" and thus, pursuant to the policies underlying the Declaratory Judgment Act, deserves resolution of the validity and enforceability of the 954 patent. *Societe de Conditionnement en Aluminium, supra,* at 945.

■ Centrix secondly contends that Dr. Dragan is a necessary party to this suit, pursuant to F.R.Civ.P. 19, and that since this Court may not assert personal jurisdiction over Dr. Dragan, the suit should be dismissed.

Rule 19 provides in pertinent part:

(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. . . .

(b) Determination by Court Whenever Joinder not Feasible. If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Thus, the Court is guided by the factors enunciated in Rule 19 in order to determine whether Dr. Dragan is an indispensable party. *See Catanzaro v. International Tel. & Tel. Corp.,* 378 F.Supp. 203, 205 (D.Del. 1974).

Upon considering these factors, the Court finds that to proceed without Dr. Dragan would be unsound. In determining if Dr. Dragan is an indispensable party, the critical focus is upon who is the real party in interest in the controversy. A particular wrinkle to this focus occurs in patent cases where the patent-holder transfers some type of interest in the patent to a third

party who either sues or is sued on the patent. The court, in many instances, then has to determine whether the patent-holder is a necessary party to the suit. Prior case law has elucidated two extremes applicable to this problem. Where the interest transferred is deemed to be a license, the patent-holder is a necessary party, because the patent-holder is still the real party in interest with respect to the validity of the patent. *Sweetwater Rug Corp. v. J & C Bedspread Co.,* 198 F.Supp. 941, 943–44; *see* Heines, *Indispensable Parties in Patent Litigation,* 58 JPOS 232 (1970). To adjudicate the validity or infringement of the patent in such a case, without the patent-holder would constitute a denial of due process.

In those instances where the transferred interest is deemed to be an assignment, the Courts have held that the patent-holder is not a necessary party to the action. *Waterman v. MacKenzie,* 138 U.S. 252, 11 S.Ct. 334, 31 L.Ed. 923 (1891); II R.C. Nordhaus, *supra,* § 73, at 73–2. Of course, many cases fall in the middle of these two extremes. In some of these cases, astute draftsmen have expressly stated in the transfer agreement which party will have the right to sue or be sued on the patent, thus eliminating the need for the court to have to determine who is necessary to the adjudication of the patent. *See Messerschmitt-Boelkow-Blohm GmBH v. Hughes Aircraft Co.,* 483 F.Supp. 49, 52 (S.D.N.Y. 1979). Unfortunately for this Court, two of the patent transfers in this case fall in the middle and there is no written document to clarify matters. Thus, an initial determination that has to be made in this lawsuit is what are the terms and conditions of the transfers of the 399 and 756 patents to Centrix. To make such a determination in this case, without benefit of documents and without the presence of one of the parties to the transfer would be improper under Rule 19. In order to adjudicate this lawsuit, the Court will not only have to determine Centrix's rights in these three patents, but Dr. Dragan's as well. Under these circumstances, the Court finds that Dr. Dragan's rights should not be adjudicated without his presence.

Since an initial determination in this suit will have to be a categorization as to the types of patent transfers of the 399 and 756 patents that were made from Dr. Dragan to Centrix, it would be violative of the underlying policies of Rule 19 to proceed without Dr. Dragan. Due to the unclear nature of the transfers and the fact that Dr. Dragan had at least the pre-transfer legal title to all the patents, he qualifies as a party who, under Rule 19(a), should be "joined if feasible." Moreover, under the four factors of Rule 19(b), Dr. Dragan is indispensable to this case. Since the determination of what type of transfer will, in this particular case, affect Dr. Dragan's interest in the three patents, it would be unsound on the facts of this case to continue without him.

Although under the principles enunciated in *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), it does appear that Dr. Dragan would not be collaterally estopped from later relitigating the issue of the nature of the transfer and Dr. Dragan's interest in the patents, *id.* at 329, 91 S.Ct. at 1443, some uncertainty would remain, however, because if Dr. Dragan is deemed to be in privity with Centrix, then he would be collaterally estopped from relitigating issues determined in this suit. *Tycom Corp. v. Redactron,* 380 F.Supp. 1183, 1188–89 (D.Del.1974). Again, because of the lack of clarity of Dr. Dragan's business relationship with Centrix at this juncture of the proceedings, it would be unwise for the Court to determine at this time whether Centrix and Dr. Dragan are in privity.

Thus, in order to remedy this problem, Centrix has presented in its motion two options to the Court: either dismiss the suit for failure to join an indispensable party, pursuant to Rule 12(b)(7), or transfer the case to Connecticut, where the federal court would have jurisdiction over Dr. Dragan as well as Centrix.

In evaluating these two choices, the Court finds, in its discretion, that it would be best to transfer this case to Connecticut, pursuant to 28 U.S.C. § 1404(a).

Section 1404(a) permits a district court to transfer a civil action to another district where the case "might have been brought," if the court, in its discretion, finds that such a transfer would better convenience the parties and witnesses and serve the interests of justice. *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).

There is no question that this suit could have been brought in Connecticut, since both Centrix and Dr. Dragan are residents of Connecticut. Whether the District of Connecticut will be a more convenient forum is a closer question. Centrix is a small, closely-held corporation, located in Connecticut. Dentsply is a much larger corporation with its principal place of business in York, Pennsylvania. Its Caulk Division has its principal place of business in Milford, Delaware. At trial, it appears that each party would call witnesses located in the vicinity of its respective businesses. Thus, trial in either Delaware or Connecticut would serve to inconvenience one of the parties.

If the Court's determination on whether to transfer were to stop here, the Court would have to deny transfer, particularly in light of the fact that Caulk's principal place of business is located in Delaware. Section 1404(a), however, requires the Court to consider a third and most important factor, namely, whether transfer would serve the interests of justice. As to this factor, the Court finds that transfer would best serve this interest. The Court has already found that in its present posture, the case cannot proceed in Delaware since Dr. Dragan is an indispensable party to this action. While Dentsply argues that this case should not be transferred because Delaware is its "home turf," if the Court were to follow this reasoning, its only alternative would be to dismiss. Such a dismissal would simply result in the technical requirement of having Dentsply refile this suit in Connecticut in order to pursue its remedy.

Thus, the Court finds that in its discretion it would be in the interest of justice to transfer this case, pursuant to 28 U.S.C. § 1404(a), to the District Court in Connecticut, where jurisdiction over Dr. Dragan could be obtained and where Dr. Dragan's related patent suit against Dentsply is pending and could be possibly consolidated. This would serve to prevent a multiplicity of lawsuits with different parties in different forums and permit one court to adjudicate the rights in the patents of both Centrix and Dr. Dragan. *See Caldwell Manufacturing Co. v. Unique Balance Co.,* 18 F.R.D. 258, 265 (S.D.N.Y.1955). In this respect, there is a strong judicial policy favoring patent controversies to be settled in a single forum. *See Messerschmitt-Boelkow-Blohm, supra,* 483 F.Supp. at 54; *Rainville Co., Inc. v. Consupak, Inc.,* 407 F.Supp. 221, 225 (D.N.J.1976).[3]

Accordingly, this Court will deny defendant's motion to dismiss the complaint and instead will order the case transferred to the United States District Court for the District of Connecticut.

An order will be entered in accordance with this opinion.

---

**3.** If it appears that Dr. Dragan's Connecticut suit might be dismissed for lack of jurisdiction or venue, it could be added to the instant case as a counterclaim once the case is transferred.