REFAC INTERNATIONAL, LTD., Plaintiff,

v.

MASTERCARD INTERNATIONAL, F.W., Woolworth's, Gap Inc., Hit or Miss, Inc., Walden Book Company, Inc., Crazy Eddie, Inc., and Mobil Oil Corporation, Defendants.

No. 89 Civ. 4494 (KTD).

United States District Court, S.D. New York.

Jan. 7, 1991.

Refac Intern., Ltd. (David Fink, of counsel), New York City, for plaintiff pro se.

Lunney & Crocco (Charles A. Crocco, of counsel), New York City, for defendant Hit Or Miss Inc.

Orrick, Herrington & Sutcliffe (Nancy Ruskin, of counsel), New York City, for defendant The Gap Inc.

Pennie & Edmonds (Frank E. Morris, of counsel), New York City, for defendant Mobil Oil Corp.

Brumbaugh, Graves, Donohue & Raymond (Robert C. Scheinfeld, of counsel), New York City, for defendant Master Card Intern. Inc.

Baker & Friedman (Stephen L. Baker, of counsel), New York City, for defendant B. Altman & Co.

Abelman Frayne Rezac & Schwab (Jeff Schwab, of counsel), New York City, for defendant F.W. Woolworth Co.

Cooper & Dunham (Thomas Carulli, of counsel), New York City, for defendant Walden Books.

## MEMORANDUM AND ORDER

KEVIN THOMAS DUFFY, District Judge:·

Plaintiff Refac International ("Refac") brings this action against eight defendants: Mastercard International ("Mastercard"), F.W. Woolworth's ("Woolworths"), Gap Inc. ("the Gap"), Hit or Miss, Inc. ("Hit or Miss"), B. Altman & Co. ("B. Altman"), Walden Book Company, Inc. ("Walden"), Crazy Eddie, Inc. ("Crazy Eddie"), and Mobil Oil Corporation ("Mobil") for infringement of United States Letters Patent No. 3,696,335 ("the '335 patent"), in connection with a credit verification system. The patentee is Jerome H. Lemelson and he received the patent on October 3, 1972. Refac moves pursuant to Fed.R.Civ.P. 42(b) to trifurcate issues of validity of the patent, liability, and damages, staying any motion by the defendants for summary judgment on issues liability or infringement until after a hearing and decision on the issue of validity. Mastercard and Mobil move pursuant to Fed.R.Civ.P. 12(b)(1) and (b)(7) to dismiss the complaint for lack of standing or for failure to join an indispensable party. In addition, Mastercard, Mobil, and the Gap move pursuant to Fed.R.Civ.P. 56 for summary judgment on the issue of non-infringement. Mastercard raises the additional defense of laches. Hit or Miss and Walden have stipulated to a dismissal of the action with prejudice. A stay of action is entered in favor of Crazy Eddie and B. Altman pending reorganization under Chapter 11 of the bankruptcy code.

On November 21, 1990, Refac and Lemelson, the named patentee, allegedly entered into a formal agreement whereby Refac gained full right, title, and interest in the subject patent. Since Refac purportedly became owner of the patent, it expressed its desire and willingness to discuss licensing and settlement with the outstanding defendants. No settlement has thus far

been reached among the parties. The following constitutes my findings of fact and conclusions of law.

## FACTS

Lemelson patented a device that allows immediate credit verification of customers' credit lines. The system is designed to update the status of credit accounts once a valid credit card is swept through the device. In addition to rapid verification of credit, the system has a registry of lost or stolen cards, thus preventing their potentially being put to unauthorized use. This is done without need for a retailer to make contact with the central data processing station of the credit card network, allowing a credit determination before any transaction data is sent to the central data processing station for billing purposes. Mobil's 3(g) Statement ("Mobil's 3(g)") ¶¶ 2–7; Plaintiff's Notice of Motion to Trifurcate, ¶¶ 1, 2. Local access to credit information, as performed by the system, eliminates the need to communicate directly with the computer by telephone lines for each transaction. Mobil's 3(g) ¶ 7. This removes expense and delay associated with computerized verification via telephone lines. Mobil's 3(g) ¶ 8.

## DISCUSSION

### A. Refac's Application to Trifurcate

Refac seeks to trifurcate the issues of validity of the patent, liability for infringements, and determination of damages until after a hearing is conducted and a decision rendered on the issue of validity. Refac contends that each of the eight defendants infringe for different reasons. Thus, the issue of validity has the "potential of disposing of the case for each and every defendant." Resolving it first, they argue, would save time, effort, and resources for both the parties and the Court. I disagree.

 Assuming Refac had not waived its objections to the motion schedule determined by me at a November 17, 1989 pretrial conference,[1] it would not save judicial

1. I conducted a pretrial conference in this mat- ter on November 17, 1989. Refac had an oppor-

resources to trifurcate this matter and determine the issue of validity first. First of all, two of the eight defendants, Crazy Eddie and B. Altman, are in bankruptcy which prevents a final resolution of this matter until the respective reorganizations are completed. Moreover, the issue of infringement may be disposed of by summary judgment without reaching trial. The issue of the patent's validity, however, may require a trial. Additionally, because the validity issue was not raised in the defendant's submissions, it was apparently never thoroughly researched. Extensive discovery would therefore be warranted by the parties, delaying these proceedings even further. Because discovery has already been conducted with respect to the issues in the summary judgment motions, it is more efficacious to resolve them now and reserve judgment on any remaining issues, possibly bifurcating liability and damages if necessary.

## B. *Lack of Standing*

 Mobil joins Mastercard in moving to dismiss the complaint for Refac's lack of standing to bring suit on behalf of Lemelson and in the alternative for failure to join Lemelson as an indispensable party. "In order to sue for infringement under 35 U.S.C. § 281, the plaintiff must be the owner of the patents, i.e., the patentee or assignee of the patent." *Afros S.P.A. v. Krauss–Maffei Corp.*, 671 F.Supp. 1402, 1444 (D.Del.1987), *aff'd without opinion*, 848 F.2d 1244 (Fed.Cir.1988). Every patent contains "a seventeen year clause under which the patentee or assignee may exclude others from making, using, or selling the invention throughout the United States." 35 U.S.C. § 154 (1982). Status as an assignee or patentee is a crucial prerequisite to bringing suit on infringement. Failure to assign all rights under the patent bars a claim for infringement unless the patentee is made a party to the suit. *Afros S.P.A. v. Krauss–Maffei Corp.*, 671 F.Supp. at 1444. Refac maintains that it had exclusive rights, as an assignee, to Lemelson's '335 patent at the time that it discovered the infringements that are subject of this case. There is no indication from the submissions that Refac was granted sole and exclusive rights in the '335 patent at that time.[2] Thus, even if I find that Refac has standing to sue on behalf of its rights in the '335 patent, it does not have the requisite exclusive rights to bring this suit without joining Lemelson.

"Agreements transferring patent rights must be either assignments or licenses. Whether an agreement be one or the other is governed by its substance, not its label." *CMS Industries, Inc. v. L.P.S. International, Ltd.*, 643 F.2d 289, 294 (5th Cir. 1981) (citing *Waterman v. Mackenzie*, 138 U.S. 252, 255, 11 S.Ct. 334, 335, 34 L.Ed. 923 (1891)). "Where an agreement effectively transfers the entire bundle of rights residing in a patent, that agreement is an assignment, not a license." *CMS Industries, Inc. v. L.P.S. International, Ltd.*, 643 F.2d at 294 (citing *Etherington v. Hardee*, 290 F.2d 28, 29 (5th Cir.1961)). Not only does the complaint fail to allege exclusivity in assignment of the patent, but Refac's rights were expressly subject to the non-exclusive rights already granted to International Business Machines ("IBM") and Hewlett–Packard ("HP"). Mastercard's Memorandum in Support of Motion to Dismiss, Exhs. B, C. As a result of Lemelson's agreement with IBM and HP, Refac

---

tunity at that time to raise any objections or concerns it might have pending the defendants' filing of respective motions to dismiss and for summary judgment. By failing to raise its objections to the motion schedule decided at that conference, Refac waived them.

**2.** At first blush, it would appear that Refac was granted the right to bring action for infringement in its own name. Relying on *Waterman v. Mackenzie*, 138 U.S. 252, 255, 11 S.Ct. 334, 335, 34 L.Ed. 923 (1891), Refac maintains that:

[it] is entitled to bring suit for infringement of the Patent, in its own name alone under the Patent Act of 1952, because it has the exclusive rights to make, use and sell under the Patent, to license others under the Patent and to enforce rights under the Patent, including the right to maintain this action for past and present infringement against Defendants for money damages....

I disagree. No full assignment was granted by Lemelson thereby.

was forced to take its license subject to the prior rights of IBM and HP.[3]

Moreover, the agreement entered between Lemelson and HP explicitly provides that if Lemelson engaged in a transaction to sell or exclusively license the patent, such transaction would be subject to HP's right to obtain "a field-of-use restriction upon the license rights granted" and "that [such] restriction shall be binding upon Lemelson and upon all persons and entities claiming a right of action by, through or under Lemelson." *See* Mastercard's Memorandum in Support of Motion to Dismiss, Exh. C, p. 10. Similarly, the IBM agreement specifically requires that any assignment be made "subject to the terms and conditions" of the IBM agreement. Mastercard's Memorandum in Support of Motion to Dismiss, Exh. B, p. 14. It further provides that in the event Lemelson wishes to sell or exclusively license one or more of the licensed patents, including the '335 patent, any such sale or license would be subject to IBM's right to have its license continue. Mastercard's Memorandum in Support of Motion to Dismiss, Exh. B, p. 19. Thus, this claim that an exclusive license was granted Refac is belied by the express language of the agreements with IBM and HP which were entered into prior to the filing of this complaint. Clearly, whether done intentionally or not, the assignment was ineffective for the full bundle of rights to the '335 patent was not transfered by Lemelson to Refac.

Indeed, it was not until November 7, 1990 that Refac was purportedly granted exclusive rights in the patent at bar.[4] *See e.g., Afros S.P.A. v. Krauss–Maffei Corp.,* 671 F.Supp. 1402, 1446 (D.Del.1987), *aff'd without opinion,* 848 F.2d 1244 (Fed.Cir. 1988) ("Permitting a presently invalid assignment to serve as the basis of a claim under 35 U.S.C. § 281 on the ground that it later 'became' valid, which ratification transposes itself back in time, will impermissibly expand the class of persons able to sue for infringement"). Clearly Lemelson, IBM, and HP shared rights in the very same '335 patent in which Refac now claims exclusive rights. Failure to assign all rights under the patent bars Refac's claim for infringement unless Lemelson is made a party to the suit. *See Erbamont Inc. v. Cetus Corp.,* 720 F.Supp. 387, 393 (D.Del.1989) ("patent owner should be viewed as a necessary party if it retains 'any interest' in the patent.")

Refac further alleges in its complaint that it has the exclusive right or license to make, use, and sell under the patent and that this amounts to a complete assignment

---

**3.** The license Agreement, in pertinent part, states:

> *Licensor has advised Refac of certain agreements previously entered into with International Business Machines Corporation and Hewlett–Packard Company.* Refac will not seek to license, and will not prosecute litigation against, such companies or any other persons or business entities known to Refac to be entitled to the benefits of such agreements or any other protective agreements in respect of the patents. In the event Refac shall learn about any such entitlement subject to Refac's having corresponded, contacted or brought litigation against any such person or business entity, Refac shall (i) *immediately notify Licensor and (ii) take all appropriate steps to cease all activity or business dealings relating to the Patents against or with such person or entity and to notify such person or entity of such cessation.* Refac agrees that any assertion by any such person or entity of any such entitlement shall constitute a complete defense to any claim of Refac, subject to contrary notification by Licensor.

Mastercard's Memorandum in Support of Motion to Dismiss, Exh. A (emphasis added).

**4.** In a letter, dated November 21, 1990, I was informed that the relationship between Lemelson and Refac materially changed and that Refac was assigned all rights, interest and title in the '335 patent. The letter, in pertinent part states:

> On November 7, 1990, Refac and Mr. Lemelson entered into an Agreement and Assignment in which Mr. Lemelson assigned all rights, interest and title to Refac in the subject patent. Enclosed is a signed statement by Mr. Lemelson, which was annexed as Attachment E to the aforementioned Agreement, certifying that Refac now has full right, title and interest in the subject patent. A separate document of assignment is expected to come to hand soon and will be submitted to the Court upon arrival.

> I have not to date received any further documents in connection with this letter. Nor does this purported assignment work retroactively to rehabilitate the incomplete assignment in the original pleadings.

with a right to enforce the license in court. *See Waterman v. Mackenzie,* 138 U.S. 252, 255, 11 S.Ct. 334, 335, 34 L.Ed. 923 (1891) ("whole" patent was "a grant to the patentee, his heirs, and assigns, for the term of seventeen years, of *the exclusive right to make, use, and vend* the invention or discovery.") (emphasis supplied). Since 1952, however, the "whole" patent is a "grant to the patentee, his heirs or assigns, for the term of seventeen years ... of the right to *exclude others* from making, using, or selling the invention throughout the United States." 35 U.S.C. § 154 (1982) (emphasis supplied). In order for Refac to have obtained rights to enforce the patent, it needed a grant of the right to *exclude others* from making, using or selling the claimed invention. Clearly Refac had no right to exclude IBM and HP from exercising their rights in the '335 patent. *See Grantham v. McGraw—Edison Co.,* 444 F.2d 210 (7th Cir.1971) (incomplete assignment where patentee granted another an exclusive license to make, use, and sell the invention, but not the right to exclude). The purported assignment was ineffective. Because Refac was not granted an assignment of the whole patent, it is not the exclusive licensee. Therefore, Refac has no standing to enforce the patent individually and Lemelson must also be named to enforce rights he intentionally or unintentionally retained in the '335 patent.

## C. *Indispensable Party*

The defendants contend that, pursuant to Fed.R.Civ.P. 19, Lemelson is a necessary and indispensable party to this suit because he did not grant exclusive rights in the '335 patent to Refac. They allege prejudice could result if Lemelson, at some later date, decides to assert his rights over the '335 patent against the very same defendants. The defendants further aver that because Lemelson is indispensable equity requires the suit be dismissed. I agree.

If a party is deemed necessary under Fed.R.Civ.P. 19(a), but cannot be joined because it is not subject to process, then the court must consider, upon application of Fed.R.Civ.P. 19(b), whether the party is indispensable. If the party is deemed indispensable, then the Court may dismiss the entire action. *Field v. Volkswagenwerk AG,* 626 F.2d 293, 300 (3d Cir.1980); *Suprex Corp. v. Lee Scientific, Inc.,* 660 F.Supp. 89, 93 (W.D.Pa.1987).

"Traditionally, when the interest transferred is deemed a license, the patent-holder is a necessary party because the patent-holder is still the real party in interest with respect to the validity of the patent." *Erbamont Inc. v. Cetus Corp.,* 720 F.Supp. 387 (D.Del.1989) (citations omitted). As aforementioned, Lemelson did not grant Refac the whole bundle of or exclusive rights in the '335 patent at the time this action was commenced.

The general rule in patent cases is that the patent owner is an indispensable party in an action brought for infringement by a mere licensee. *Rainville Co., Inc. v. Consupak, Inc.,* 407 F.Supp. 221, 225 (D.N.J.1976). Although Refac argues that the agreement granted it exclusive rights in the '335 patent, that assertion is belied by rights that Lemelson granted IBM and HP. The assignment was ineffective. Lemelson's grants, with respect to the '335 patent, although in form may appear exclusive, are in substance non-exclusive. Apparently, Lemelson did not grant his whole bundle of rights to Refac or any other entity, thus, ostensibly retaining some rights in the patent himself. Refac was thus in substance a mere licensee, regardless that it retained some limited powers to bring action on behalf of the rights it held in the patent. Thus, I find that Lemelson is an indispensable party to any patent infringement or patent validity action.

Moreover, where there is a dispute regarding the terms and conditions of the patent transfer, i.e., whether the transferee is a licensee or assignee, it would be improper under Fed.R.Civ.P. 19 to make such a determination absent evidence from the transferor. *Dentsply Int'l, Inc. v. Centrix, Inc.,* 553 F.Supp. 289, 294 (D.Del. 1982). Here, it is clear that Lemelson is the original owner of the patent in this suit.

In addition, he is the transferor of any rights thus far granted to the other parties.

It is unclear to me whether Lemelson's intent was to affect an assignment of the '335 patent to Refac before the time that the instant action was commenced. As a result of the ambiguities inherent in Lemelson's transfer, the rights of Mastercard and Mobil, *et al.* are severely compromised should I choose to continue to trial in the present form of the action. Specifically, Mastercard and Mobil *et al.* may be forced, after defending this lawsuit, to defend another suit initiated by Lemelson. *Cf. National Ass'n of Basketball Referees v. Middleton* 688 F.Supp. 131 (S.D.N.Y. 1988) (purpose of joining materially interested parties is to permit court to dispose of all matters before it at one time); *See also Afros S.P.A. v. Krauss–Maffei Corp.,* 671 F.Supp. 1402, 1445 (D.Del.1987) ("The policy rationale for limiting the right to bring an infringement suit to those who possess *all rights* to the patent is to permit complete adjudication of a dispute in order to protect the patent owner's rights and the public's access to the technological innovation contained in a patent."). I, therefore, cannot in good conscience allow the action to go forward knowing that Lemelson may have retained some rights in the '335 patent.

 When joinder is not feasible, "the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed." *Dentsply Int'l, Inc. v. Centrix, Inc.,* 553 F.Supp. 289, 293 (D.Del.1982) (quoting Fed.R.Civ.P. 19(b)). Maintaining this action in its present form would clearly be prejudicial and unjust. Moreover, I refuse to assert jurisdiction over Lemelson for the Court is not and should not be an advocate of any party, and cure should remain with the bar and not the judiciary.

## D. *Immunity from Suit*

The motion brought by the Gap raises another serious question and demonstrates how prejudicial it would be to continue this action in the absence of Lemelson. Gap argues that even if its credit verification system were covered by the patent at bar, the Gap would still be entitled to summary judgment because it falls within the immunity from suit provisions of the license agreement between the patentee and IBM. Specifically in 1981, it appears that IBM entered into an agreement with Lemelson pursuant to which Lemelson granted IBM a nonexclusive license under certain patents, including the '335 patent. Ruskin Affid. ¶ 4, and Exh. B. The agreement that granted IBM a license, *inter alia,* to make, use, lease, and sell licensed products, grants an immunity from suit under the licensed patents to users of products manufactured, leased, or sold by IBM. Ruskin Affid., Exh. B, § 2.2. Section 2.3 of the license agreement grants an analogous immunity from suit to users of software programs leased, licensed or sold by IBM. Ruskin Affid., Exh. B. The Gap uses only IBM hardware and software in its credit authorization system. Atkinson Affid. ¶¶ 13–20. Accordingly, the Gap would appear to be immune from suit for patent infringement, regardless of other issues of standing.

For the foregoing reasons, Refac's motion to trifurcate is denied. Motions for summary judgment are granted in favor of the defendants' Mastercard, Mobil, and the Gap. Lemelson is deemed a necessary and indispensable party to this action. For reasons of equity and regarding good conscience, this case must be dismissed. Maintaining this action in its present form would clearly be prejudicial and unjust to the remaining defendants in consideration of rights Lemelson might later assert on behalf of his ownership rights in the '335 patent. The complaint is thus dismissed in its entirety.

SO ORDERED.