**HILL PHOENIX, INC., Plaintiff,**

v.

**SYSTEMATIC REFRIGERATION, INC., Defendant.**

No. 2:00CV250.

United States District Court, E.D. Virginia, Norfolk Division.

Oct. 19, 2000.

Walter D. Kelly, Jr., Willcox & Savage, Norfolk, VA, Stephen R. Risley, J. Scott Culpepper, Jennifer M. Gruber, Thomas, Kayden, Horstemeyer & Risley LLP, Atlanta, GA, for plaintiff.

Richard J. Cromwell, McGuire, Woods, Battle & Boothe, LLP, Norfolk, VA, Alan M. Anderson, Christopher K. Larus, Sharna A. Wahlgren, Adam S. Huhta, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, MN, for defendant.

## OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

This matter is before the court on the motion to intervene filed by Delaware Capital Formation, Inc. ("DCF") and the motion to dismiss filed by Systematic Refrigeration, Inc. ("Systematic"). For the reasons given below,[1] DCF's motion to intervene is **GRANTED,** and Systematic's motion to dismiss is **DENIED.**

### I. Factual and Procedural History

Hill Phoenix, Inc., claims to be an exclusive licensee of U.S.Patent No. RE 33,620 ("the '620 Patent"), entitled Continuously Variable Capacity Refrigeration System. On or about July 21, 1998, Hill Phoenix became aware that Systematic was selling and installing refrigeration systems involving technology similar to that covered by the '620 Patent. By letter dated December 7, 1998, Hill Phoenix notified Systematic of its belief that Systematic was infringing the patent and requested more information about Systematic's refrigeration systems. Systematic responded in a letter dated March 15, 1999, by denying that its products infringe some of the claims of the '620 Patent and alleging that other claims of the '620 Patent are invalid; Systematic did not supply the information that Hill Phoenix had requested. Hill Phoenix again requested information regarding Systematic's systems, and Systematic never responded. Believing that Systematic would continue to infringe the patent until enjoined by the court, Hill

---

1. At the conclusion of the hearing on these motions, the court gave its summary ruling, reserving its right to issue a written opinion setting forth in more detail the reasons for its rulings.

Phoenix filed its complaint on April 6, 2000. On August 16, 2000, DCF, the current owner of the '620 Patent, filed a motion to intervene. On August 31, 2000, Systematic filed a motion to dismiss.

Hill Phoenix traces its interest in the '620 Patent as follows. On January 1, 1994, DCF and Dover Diversified, Inc. ("DDI") entered into a general licensing agreement, pursuant to which DCF granted an exclusive license to DDI in a series of patents owned by DCF, which were listed in an exhibit attached to the agreement. On February 21, 2000, MRGX Acquisition, Inc. ("MRGX"), which was the owner of the '620 Patent at that time, assigned all of its right, title, and interest in the '620 Patent to DCF. DCF took its license subject to a nonexclusive license that had been granted previously to a third party. Also on February 21, 2000, the agreement between DCF and DDI was amended to include the '620 Patent. Thus, DDI was granted an exclusive license, subject to the nonexclusive license previously granted to a third party. Also on February 21, 2000, DDI granted an exclusive sub-license to Hill Phoenix, which Hill Phoenix took subject to the outstanding nonexclusive license.

## II. Analysis

Systematic's motion to dismiss is based on its allegation that Hill Phoenix does not have standing to bring this lawsuit. Under the law of standing in patent cases, if Hill Phoenix has an "exclusive" license, then Hill Phoenix has standing to sue jointly with DCF, the owner of the patent; in that case, the standing defect can be cured by allowing DCF to intervene. If Hill Phoenix's license is "nonexclusive," however, then Hill Phoenix does not have standing, and the lack of standing cannot

be cured by the addition of DCF as a party.

For the reasons given below, the court has determined that Hill Phoenix has made a showing sufficient to survive a motion to dismiss that it was granted an exclusive license. Additionally, the court has determined that DCF should be permitted to intervene. Accordingly, the court grants DCF's motion to intervene and, because this cures the apparent standing defect,[2] the court denies Systematic's motion to dismiss for lack of standing.

### A. Standing

■■■ "It is well established ... that before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue." *Whitmore v. Arkansas*, 495 U.S. 149, 154, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). When a standing issue is raised in a motion to dismiss, the court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The Supreme Court has elaborated as follows on the proof required at various stages of the litigation:

At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim. In response to a summary judgment motion, however, the plaintiff can no longer rest on such "mere allegations," but must "set forth" by affidavit or other evidence "specific facts," Fed. Rule Civ.Proc. 56(e), which for purposes

---

**2.** The court emphasizes that Hill Phoenix has alleged facts sufficient to survive a motion to dismiss on the issue of its status as an exclusive licensee. As the court explained at the hearing, the court is not ruling that the addition of DCF as a party would cure the standing defect that would arise if Hill Phoenix is

only a bare licensee. If it should later become apparent that Hill Phoenix does not in fact have an exclusive license, but rather is merely a bare licensee, the court will then dismiss the suit without prejudice to DCF to bring suit in its own name.

of the summary judgment motion will be taken to be true. And at the final stage, those facts (if controverted) must be supported adequately by the evidence adduced at trial.

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (alteration in original) (internal quotation marks & citation omitted).

Standing to sue for patent infringement derives from the Patent Act, which provides that the patentee, or his successors in interest, "shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281; *see id.* § 100(d) (defining "patentee" to include successors in title to the patentee to whom the patent was issued). Additionally, the Federal Circuit has held [3] that where a patentee makes an assignment of "all significant rights under the patent," the assignee is deemed the "effective patentee," and such an assignee also has standing to sue in its own name for patent infringement. *Ortho Pharmaceutical Corp. v. Genetics Institute, Inc.,* 52 F.3d 1026, 1030 (Fed.Cir.1995).

■ A licensee has been given some, but not all, of the significant rights under a patent. A bare licensee is one whose license amounts to "no more than a covenant by the patentee not to sue the licensee for making, using or selling the patented invention, the patentee reserving the right to grant others the same right." *Id.* at 1031. As one "who has no right to exclude others from making, using, or selling the licensed products," a bare licensee has "no legally recognized interest that entitles it to *bring or join* an infringement action." *Abbott Laboratories v. Diamedix Corp.,* 47 F.3d 1128, 1131 (Fed.Cir.1995) (emphasis added). Such a licensee has no standing to bring an infringement suit, or even to join in one, because "[a] holder of such a nonexclusive license suffers no legal injury from infringement." *Ortho Pharmaceutical,* 52

F.3d at 1031. Although a bare licensee may suffer economic injury as a result of patent infringement, this is not an injury sufficient to confer standing. "To have co-plaintiff standing in an infringement suit, a licensee must hold some of the proprietary sticks from the bundle of patent rights, albeit a lesser share of rights in the patent than for an assignment and standing to sue alone." *Id.*

■ In contrast to the bare licensee, an exclusive licensee has been given sufficient rights in a patent to obtain standing, but only if the patent owner is joined in the lawsuit; in such a case, the licensee sues in the name of the patent owner. *See Abbott Laboratories,* 47 F.3d at 1131. An exclusive license does more than create a covenant not to sue; it additionally "makes the licensee a beneficial owner of some identifiable part of the patentee's bundle of rights to exclude others." *Ortho Pharmaceutical,* 52 F.3d at 1032. It is this beneficial ownership of the right to prevent others from making, using, or selling the invention that confers co-plaintiff standing. *See id.*

■ To determine whether a licensee is a bare licensee or an exclusive licensee, the court must "ascertain[ ] the intent of the parties to the license as manifested by the terms of their agreement and examining the substance of the grant." *Textile Productions, Inc. v. Mead Corp.,* 134 F.3d 1481, 1484 (Fed.Cir.1998); *see Ortho Pharmaceutical,* 52 F.3d at 1032 ("To resolve the issue of standing, we must examine the licensing agreement to determine whether the parties intended to effect a transfer of proprietary rights to the licensee as an incident to protection of its interests."). In particular, if the patent owner reserves the right to grant other licenses in the future, then the licensee is not an exclusive licensee. *See Ortho Pharmaceutical,* 52 F.3d at 1033–34 (holding that a licensee

---

**3.** The opinions of the Federal Circuit are binding on federal district courts in matters concerning patent law. *See Panduit Corp. v.*

*All States Plastic Mfg. Co.,* 744 F.2d 1564, 1573 (Fed.Cir.1984) (per curiam).

was nonexclusive on the ground that the patentee had reserved the right to grant additional licenses, despite the existence of a "right-to-sue" clause in the license); *see also, e.g., Textile Productions,* 134 F.3d at 1484 ("To qualify as an exclusive license, an agreement must clearly manifest the patentee's promise to refrain from granting to anyone else a license in the area of exclusivity."). The use of the term "exclusive," or the lack thereof, in the license is not dispositive. *See Ortho Pharmaceutical,* 52 F.3d at 1032. Similarly, the existence of a "right-to-sue" clause in the license is not dispositive. *See id.* at 1034.

The parties do not dispute that DCF is the owner of the '620 Patent, and thus, there is no question here that Hill Phoenix is some form of licensee, not the patentee or an assignee. Therefore, it is clear that Hill Phoenix may not proceed alone in this action. The issue is whether Hill Phoenix has sufficient rights in the '620 Patent to obtain standing when joined by DCF, or, in the alternative, Hill Phoenix has no standing at all. This determination depends upon the nature of Hill Phoenix's license.

In support of its motion to dismiss, Systematic asserts that Hill Phoenix is a bare licensee, as a consequence of which Hill Phoenix does not have standing, and the lack of standing cannot be cured by adding DCF as a party. Systematic supports its assertion by arguing that (1) there are other, prior, licensees, and the existence of these other licensees precludes a finding that Hill Phoenix is an exclusive licensee; and (2) Hill Phoenix has failed to establish the chain of interests it alleges in support of its status as an exclusive licensee.

■ The record reflects that there is at least one nonexclusive licensee that obtained its license prior to the granting of Hill Phoenix's license. Hill Phoenix argues that, notwithstanding the existence of this prior, nonexclusive licensee, Hill Phoenix has obtained a sufficient interest in the patent to be considered an exclusive licensee. The court agrees.

The conclusion that a licensee whose license was granted subject to a prior nonexclusive license may have standing to sue jointly with the patentee is consistent with the standing rationale articulated by the Federal Circuit. What confers standing is the right to prevent others from using the patented technology. The Federal Circuit has never stated that the licensee must have the right to exclude *all* others. If a patentee grants a second license that is subject to a prior-existing, nonexclusive license, but otherwise provides the second licensee with the right to exclude all others except the prior licensee, then the subsequent licensee has proprietary rights sufficient to confer standing.[4] In particular,

4. Systematic attempts to defeat this argument by citing cases in which Systematic claims the court held that a licensee could not be an exclusive licensee due to the existence of prior licenses. In the cases that Systematic cites, however, the licensee whose standing was at issue was attempting to sue without joining the patentee. Thus, the issue before the court was not whether the licensee was an exclusive licensee, but rather, the issue was whether the licensee was in fact an assignee, which could sue on its own, without joining the patentee.

In *Refac International, Ltd. v. Mastercard International, F.W.,* 758 F.Supp. 152 (S.D.N.Y.1991), for example, the court held that because Refac's rights under its license were given subject to the rights of existing licensees, Refac could not be an assignee. *See* 758 F.Supp. at 155–56. Having found that Refac was not an assignee, the *Refac* court dismissed the suit because the patentee could not be joined. *See id.* at 157. Similarly, in *Prima Tek II, L.L.C. v. A–Roo Co.,* 222 F.3d 1372 (Fed.Cir.2000), also cited by Systematic, the court addressed the issue of whether the parties who brought suit had standing to sue for infringement without the patentee.

Clearly, one who takes a license subject to the right of others to use the patented technology cannot have obtained *all* substantial rights under the patent, which is what is required to obtain the status of assignee and be able to bring suit alone. This does not bear on the question, however, whether one who may exclude all but the holder of a previously granted license has obtained sufficient rights to sue as a co-plaintiff with the patentee.

this second licensee would be a "beneficial owner of some identifiable part of the patentee's bundle of rights to exclude others." *Ortho Pharmaceutical,* 52 F.3d at 1032.

Moreover, in *Abbott Laboratories,* the Federal Circuit suggested in dicta that a licensee whose license was granted subject to prior, nonexclusive licenses nevertheless had standing as an exclusive licensee. Systematic correctly points out that the issue before the Federal Circuit in *Abbott* was whether Abbott was an assignee that could bring suit on its own, without joining the patentee. Thus, the court did not directly address the question of whether Abbott was an exclusive licensee. Nevertheless, after summarizing the law of standing pertinent to patent cases, the court did refer to Abbott's license as an "exclusive license [that] was ... made subject to prior licenses granted by [the patent owner]." *Abbott Labs.,* 47 F.3d at 1132. Additionally, the court joined the patent owner, who had moved to intervene, and allowed the suit to go forward. *See id.* at 1133–34. Although Systematic characterizes the opinion as "careless," *Defendant Systematic Refrigeration's Reply Mem. in Supp. of Its Mot. to Dismiss,* at 8, it is unlikely that the court would have been so careless, given that standing was an issue before it, as to overlook the question of whether Abbott, although not an assignee that could bring suit alone, was nevertheless an exclusive licensee with standing sufficient to allow it to bring suit jointly with the patentee.

The court concludes that the existence of one or more nonexclusive licensees would not preclude a finding that Hill Phoenix is an exclusive licensee with standing to bring this case jointly with DCF. In its second line of argument, Sys-

tematic challenges the chain of interests that Hill Phoenix claims has provided it with its exclusive license. Hill Phoenix claims to be an exclusive licensee by virtue of the exclusive sub-license granted to it by DDI, who in turn was an exclusive licensee of DCF, the owner of the patent. Systematic does not question the validity of the assignment from MRGX to DCF, nor does it argue that the licensing agreements between DCF and DDI or between DDI and Hill Phoenix are insufficient as exclusive licenses. Rather, Systematic challenges this chain of interests on the ground that Hill Phoenix has not sufficiently documented the transfer of interest in the '620 Patent from DCF to DDI. Specifically, Systematic asserts that DCF did not yet have any interest in the '620 Patent to convey at the time the licensing agreement between DCF and DDI was made, and that there is no evidence that DCF granted a license in the '620 Patent to DDI after DCF had obtained its interest from MRGX. According to Systematic, DDI never obtained any interest in the '620 Patent, and therefore could not have conveyed any interest to Hill Phoenix; the purported transfer of interest from DDI to Hill Phoenix is thus without effect.

Hill Phoenix has proffered copies of the licensing agreements at issue and has explained that the DCF–DDI general licensing agreement was amended to include the '620 Patent simultaneously with the assignment of the patent from MRGX to DCF. Thus, Hill Phoenix has sufficiently explained how and when these transfers of interest occurred, for the purpose of surviving a motion to dismiss.[5] *See Lujan,* 504 U.S. at 561, 112 S.Ct. 2130; *Warth,* 422 U.S. at 501, 95 S.Ct. 2197.

---

5. It should be noted, however, that if Hill Phoenix did not become an exclusive licensee until February 21, 2000, then it does not have standing to sue for infringements that occurred before that date. *Cf. Crown Die & Tool Co. v. Nye Tool & Mach. Works,* 261 U.S. 24, 41, 43 S.Ct. 254, 67 L.Ed. 516 (1923) (explaining that "the injury inflicted by an act

of infringement falls upon the individual who owns the monopoly at the date of the infringement," and thus, to have standing, "the plaintiff must not only have a legal title to the patent, but must have also been its owner *at the time of the infringement*" (emphasis added)).

■ Finally, Systematic asserts that Hill Phoenix cannot have standing because it is a mere sub-licensee of a nonexclusive licensee. To the extent that this assertion relies on Systematic's presumption that DDI is not an exclusive licensee because of the existence of prior, nonexclusive licensees, this argument has been rejected above. To the extent that Systematic may be challenging Hill Phoenix's derivation of its status as an exclusive licensee through an exclusive sub-license from an exclusive licensee, this argument is rejected as well. The fact that a sub-licensee derives its interest through an intermediary does not affect the exclusive sub-licensee's critical status as one with the proprietary right to exclude. *Cf. Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.,* 761 F.2d 649, 651–52, 657 (Fed.Cir.1985) (affirming on appeal an award of damages to an exclusive sub-licensee in a suit brought by the patentee, an exclusive licensee, and its exclusive sub-licensee, thereby suggesting that a sub-licensee, as long as it has an exclusive sub-license, has joint standing to sue for infringement).

The court concludes that Hill Phoenix has alleged facts that, if proved, are sufficient to demonstrate its status as an exclusive licensee. Therefore, Hill Phoenix has sufficiently alleged its standing to bring a suit for infringement of the '620 Patent, provided it is joined in the suit by DCF, the current owner of the patent.

### B. DCF's Motion to Intervene

Because Hill Phoenix appears to be an exclusive licensee, the standing defect can be cured by allowing DCF to intervene. Systematic opposes DCF's motion to intervene on the ground that the motion was not timely and that Systematic would be prejudiced if the motion is granted.

■ A non-party is entitled as of right to intervene in an action, pursuant to Federal Rule of Civil Procedure 24(a)(2), on a showing of four factors: (1) the applicant claims an interest in the property at issue in the action; (2) the applicant's ability to protect that interest would be impaired without its intervention; (3) the interest is not adequately protected by existing parties to the litigation; and (4) the motion to intervene is timely. *See* Fed.R.Civ.P. 24(a)(2); *Nish and Goodwill Services, Inc. v. Cohen,* 191 F.R.D. 94, 96 (E.D.Va.2000). Alternatively, a party may be permitted to intervene pursuant to Rule 24(b)(2), at the discretion of the court, provided the motion is timely and the applicant presents a question of law or fact in common with that presented by the litigation. *See* Fed.R.Civ.P. 24(b)(2). Under either Rule, the failure to move for intervention in a timely manner is grounds for denial of the motion. *See N.A.A.C.P. v. New York,* 413 U.S. 345, 365, 93 S.Ct. 2591, 37 L.Ed.2d 648 (1973). Whether a motion to intervene was timely must be determined based on all the circumstances. *See id.* at 366. Factors to consider include the point to which the suit has progressed at the time the motion to intervene is filed; the length of time the applicant knew, or should have known, of the litigation before filing its motion to intervene; and prejudice to existing parties that would result from allowing the intervention. *See id.* at 366–69. The Fourth Circuit has stated that the most important factor in determining whether a motion to intervene is timely is the prejudice caused to the other parties by the delay. *See Spring Const. Co., Inc. v. Harris,* 614 F.2d 374, 377 (4th Cir.1980).

■ Systematic opposes DCF's motion to intervene only with respect to the timeliness requirement. In particular, Systematic claims that, given the discovery and trial preparation schedule that has been set, the addition of DCF as a party would make it impossible for Systematic to adequately prepare for trial, because it would not have time to serve interrogatories or document requests on DCF.

Counsel for Hill Phoenix and DCF indicated in their pleadings, as well as at the hearing, that they would not oppose a reasonable modification of the trial schedule.

Moreover, if the court were to deny DCF's motion to intervene, it would dismiss the suit without prejudice to Hill Phoenix to refile jointly with DCF. *See Alcatel USA, Inc. v. Orckit Communications, Ltd.,* No. C 99–04468 SI, 2000 WL 502846, at *4–5 (N.D.Cal. Apr.13, 2000) (dismissing without prejudice when lack of standing could be cured). In that event, it seems likely that Hill Phoenix and DCF would refile the suit as joint plaintiffs, in which case the trial would go forward on some other, even later, schedule. In view of the fact that the intervention of DCF would cure the standing defect,[6] and because any potential prejudice to Systematic by DCF's intervention can be avoided, the court finds that intervention here is warranted.

### III. Conclusion

For the reasons set forth above, the court **GRANTS** DCF's motion to intervene and **DENIES** Systematic's motion to dismiss.

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to counsel for all parties.

IT IS SO **ORDERED.**