643 F.2d 289
 217 U.S.P.Q. 20
 CMS INDUSTRIES, INC., Plaintiff-Appellee,
v.
L. P. S. INTERNATIONAL, LTD. and Sam C. Evans,
Defendants-Appellants.
MINNESOTA MINING AND MANUFACTURING COMPANY, Etc., Plaintiff-Appellee,
v.
SEE INTERNATIONAL, LTD., Stop-Loss Incorporated, Sam Evans,
Defendants-Appellants,
v.
Elmer WHITAKER, CMS Industries, Inc., and Fred Langley,
Defendants-Appellees.
 No. 79-3893.
 United States Court of Appeals,
Fifth Circuit.
 
 Unit B
 April 22, 1981.
 Hanes & Young, Paul L. Hanes, Atlanta, Ga., for defendants-appellants.
 Haas, Holland, Lipshutz, Levison & Gibert, Hugh W. Gibert, Atlanta, Ga., for Elmer Whitaker and Fred. R. Langley.
 Johm M. Sikes, Jr., Atlanta, Ga., John C. Barnes, Stanley G. DeLaHunt, St. Paul., Minn., for Minnesota Mining Mfg. Co.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before GODBOLD, Chief Judge and HATCHETT, Circuit Judge, and MARKEY*, Chief Judge.
 MARKEY, Chief Judge:
 
 
 1
 SEE International, Inc. and Sam C. Evans (collectively, SEE) appeal from a judgment that Elmer Whitaker (Whitaker) is entitled to royalties from Minnesota Mining and Manufacturing Company (3M), under a license to make, use, and sell anti-theft systems covered by six patents.[1] We affirm.
 
 Background
 
 2
 In 1969 SEE, owner of the involved patents, concluded a license agreement with 3M.[2] In Article II of that agreement, SEE purported to grant to 3M "an exclusive license and right to license others ... throughout the world." That grant, however, was made subject to a "retention by (SEE) (or a company in which (SEE) owns at least fifty-one (51) percent of the outstanding voting stock) of a non-transferable right ... to make, use and sell...."[3] 3M agreed to pay a royalty calculated as a percentage of sales.
 
 
 3
 On June 27, 1972, SEE executed an assignment of the patents to its majority-held subsidiary, Stoplifter International, Inc. (Stoplifter), in which SEE sold, assigned, and transferred to Stoplifter "the entire right, title and interest in and to the said patent(s)...." The assignment was recorded in the Patent and Trademark Office pursuant to 35 U.S.C. § 261.
 
 
 4
 On the same day, June 27, 1972, Stoplifter and SEE signed another agreement, unrecorded in the Patent and Trademark Office, in which SEE purported to reserve "the unrestricted right and license ... to contract for, make, design and sell ... systems embodying the invention ... without the payment of any royalty ...," and SEE retained all rights to any "present or future agreements, royalties, or license fees which are due...." The unrecorded agreement also provided that SEE reserved the unrestricted right "which may be exercised by ... any duly authorized assignee" to practice the invention, and that SEE would enjoy "all the benefits under said ... Patents ... as if the same had been retained."
 
 
 5
 In February 1973, all assets of Stoplifter were transferred to Stop-Loss, Inc. (Stop-Loss) another majority-held subsidiary of SEE. It is undisputed that whatever rights in the patents existed in Stoplifter were validly transferred to Stop-Loss.
 
 
 6
 In 1977, after several years of manufacturing and selling equipment covered by the patents, Stop-Loss became subject to liquidation proceedings in Delaware for failure to pay a state franchise fee. On February 23, 1978, the Delaware Chancery Court issued an order requiring publication of a liquidation plan and setting June 5, 1978 as the deadline for filing of claims against Stop-Loss. On July 7, 1978, that court issued an order approving that plan. The plan transferred Stop-Loss's interest in the patents to Whitaker, a stockholder, officer and director of Stop-Loss, in discharge of a secured claim Whitaker held against Stop-Loss. An assignment of the patents to Whitaker was executed for Stop-Loss on July 11, 1978.
 
 
 7
 On February 8, 1978, Whitaker, obviously without waiting for completion of the Chancery proceeding, entered an agreement with CMS Industries, Inc. (CMS), reciting that Whitaker was the owner of the patents and granting a non-exclusive license throughout the United States to CMS to make, use, and sell the patented equipment in return for royalty payments to Whitaker.
 
 
 8
 On February 22, 1978, CMS filed a patent infringement suit against L. P. S. International, Ltd. (LPS), a subsidiary of SEE, and Sam Evans, a principal in both SEE and LPS. SEE had licensed LPS to make, use and sell equipment covered by the patents. The CMS complaint alleged that it was the "assignee" of Whitaker's interests in the patents and that LPS and Evans were infringing those patents.
 
 
 9
 3M filed an interpleader complaint on June 22, 1978, naming as defendants SEE, Stop-Loss, Evans, Whitaker, CMS and Fred Langly, (as custodian of the Delaware liquidation proceeding involving Stop-Loss), alleging that several defendants were demanding royalty payments from 3M, and requesting the money be paid into court and the defendants allowed to interplead their claims.
 
 
 10
 The district court entered an order dismissing the infringement action.[4] The court granted summary judgment in favor of Whitaker in the interpleader action, holding him owner of the patents and entitled to the royalty payments from 3M.
 
 Issue
 
 11
 The sole issue presented is whether the district court erred in granting Whitaker's motion for summary judgment.
 
 OPINION
 
 12
 There being no material issue of fact, the district court based its judgment on two conclusions of law: (1) that the Chancery Court proceeding was entitled to full faith and credit, and (2) that the unrecorded agreement between SEE and Stoplifter had no legal effect.
 
 
 13
 (1) The Chancery Court Proceeding
 
 
 14
 SEE argues that the Chancery Court proceeding does not bind it because (1) though it had notice of the proceeding, it did not have notice that a judgment affecting it was about to be entered, that is, no notice of a duty to object to the plan of distribution, and (2) it was not a named party in that proceeding.
 
 
 15
 The argument regarding notice is unpersuasive. The Chancery Court proceeding followed a statutory framework designed to provide notice and an opportunity to be heard to all creditors and stockholders of a corporation the affairs of which are being wound up. SEE having had notice of the proceeding, its unawareness of a deadline to object to the judgment resulting from that proceeding, if that unawareness existed, cannot be permitted to render the judgment unenforceable against it. SEE does not and cannot argue that it was unable to file a claim, but contents itself with the implication that its unawareness of a deadline somehow precluded its filing of a claim in the proceeding. The courts have been silent on the question of subsequent notices, perhaps because reasonable persons having notice of proceedings affecting their interests have universally investigated their duties and obligations in relation to the protection of their own interests.[5] In all events, the proper repose of Chancery proceedings requires that where, as here, a majority stockholder is notified that a proceeding is underway to wind up its subsidiary, it cannot be permitted to belatedly impede the grant of full faith and credit to the judgment emanating from that proceeding on the ground that it ignored its obligation to itself to maintain awareness of deadlines and other events affecting its interests. It is axiomatic in the law that one may not profit from having slept on one's rights.[6]
 
 
 16
 Nor was it necessary that SEE be named as a party in the liquidation proceeding. As the trial court succinctly stated: "It is elementary that a state court, pursuant to applicable statute, has the power to wind up the affairs of a corporation which is a creature of the laws of that state." As part of that winding up, it may dispose of the property of the company being liquidated. In this case that company was Stop-Loss, not SEE.
 
 
 17
 Thus, the district court properly gave full faith and credit to the Chancery Court proceeding and its resulting transfer to Whitaker of whatever patent rights Stop-Loss had.
 
 
 18
 (2) The Unrecorded Agreement
 
 
 19
 The legal effect of the unrecorded agreement between SEE and Stoplifter is strenuously argued, SEE urging that the effect was to transfer the right to 3M's royalties back to itself, thus immunizing that right from the Chancery proceeding, and Whitaker arguing that the unrecorded agreement had no legal effect.
 
 
 20
 The unrecorded agreement contains these provisions:
 
 
 21
 WHEREAS, SEE owns the entire right, title and interest in and to the following U. S. Patents ...
 
 
 22
 WHEREAS, STOPLIFTER is desirous of acquiring a certain specified ownership in and unto the letters Patent and Patent Applications subject nevertheless to the below mentioned reservations:
 
 
 23
 NOW THEREFORE, in consideration of One Dollar ($1.00), paid to SEE by STOPLIFTER, receipt of which is hereby acknowledged, SEE does hereby agree to execute the necessary Patent assignment documents subject however, to the following express conditions and reservations to which STOPLIFTER assents by the acceptance of this instrument or by doing any act in accordance with itSEE reserves the unrestricted right and license (which may be exercised by SEE or by any duly authorized assignee) to contract for, make, design and sell, without limitations; systems embodying the invention or improvements described and set forth in said letters Patent and Patent Applications without the payment of any royalty or license whatsoever and in addition SEE retains all rights to any present or future agreements, royalties, or license fees which are due or may become due from any source whatsoever. It being expressly understood and agreed that SEE shall enjoy all the benefits under said letters Patent and Patents to be issued as if the same had been retained.
 
 
 24
 Those provisions are in direct conflict with these provisions of the recorded assignment executed on the same day:
 
 
 25
 WHEREAS, SEE INTERNATIONAL, INC., a corporation of the State of Delaware, has the entire right, title and interest in and to the patent and patent applications listed in the attached Appendix A; and
 
 
 26
 WHEREAS, STOPLIFTER INTERNATIONAL, INC., a corporation of the State of Texas, is desirous of acquiring all the right, title and interest in and to the aforementioned patent and patent applications listed in Appendix A;
 
 
 27
 NOW, THEREFORE, for and in consideration of the sum of One Dollar ($1.00), and other good and valuable consideration, the receipt of which is hereby acknowledged, See International, Inc., does hereby sell, assign, and transfer to Stoplifter International, Inc., its successors and assigns, for the territory of the United States of America and throughout the world, the entire right, title and interest in and to the said patent and patent applications listed in Appendix A, the same to be held and enjoyed by the said Stoplifter International, Inc., for its own use and behoof and for its successors and assigns, as fully and entirely as the same would have been held by See International, Inc., had this assignment and sale not been made.
 
 
 28
 When the two documents are read together, it is evident that an attempt was made to undo in one precisely that which was done in the other. Hence, we cannot, as the long-standing rule of construction enjoins, so read them as to preserve both.
 
 
 29
 Agreements transferring patent rights must be either assignments or licenses. Waterman v. Mackenzie, 138 U.S. 252, 255, 11 S.Ct. 334, 335, 34 L.Ed. 923 (1891). Whether an agreement be one or the other is governed by its substance, not its label. Waterman v. Mackenzie, supra, at 256, 11 S.Ct. at 335; Etherington v. Hardee, 290 F.2d 28, 29 (5th Cir. 1961). Where an agreement effectively transfers the entire bundle of rights residing in a patent, that agreement is an assignment, not a license. Etherington v. Hardee, supra; Merck & Co. v. Smith, 261 F.2d 162, 164 (3rd Cir. 1958). Thus the unrecorded agreement, purporting to convey to SEE "all the benefits" it would enjoy if the patents "had been retained", was an attempted assignment. Because it was unrecorded, as required by 35 U.S.C. § 261, it was ineffective against one who acquired rights for value without notice from the owner of record of the patents.
 
 
 30
 SEE does not argue that it retained only a license in the unrecorded agreement. It does argue, however, that the parties intended the two agreements to transfer only "bare, legal title" to Stoplifter, with all beneficial interest being retained by SEE. That argument must fail, Stop-Loss' years of manufacturing and selling products embodying the invention is inconsistent with the notion that it got only bare legal title in the assignment while returning all beneficial interest to SEE. If retention of only a beneficial interest had been intended, SEE was ill advised to employ "the same" after "Patent and Patents" in describing what had been "retained." If that language be unclear, it must be resolved against the party for whose benefit the language is used. Craddock v. Greenhut Construction Co., 423 F.2d 111, 114 (5th Cir. 1970).
 
 
 31
 SEE's attempted retention of the right to make and sell systems embodying the invention without payment to Stop-Loss, and its attempted retention of all rights to present and future agreements, royalties, and license fees, are of the same genre. The notion that SEE was retaining only a beneficial interest is further refuted by its attempted retention of "the unrestricted right and license (which may be exercised by ... any duly authorized assignee)" (emphasis ours). Whether that language applied to an assignee of title or to the transferee of some lesser right may be arguable, but if so, it must be interpreted against SEE. Craddock v. Greenhut Construction Co., supra.
 
 
 32
 In attempting to retain "all the benefits ... as if ... (the patents) had been retained" while at the same time recording notice of a total assignment of the entire right, title and interest in the patents to Stoplifter, SEE overreached and ran afoul of 35 U.S.C. § 261, which establishes a recording system to inform the interested public respecting the ownership of patents. SEE's brief describes the recorded agreement as one that merely "purported to be an assignment of all right, title, and interest in the patents to Stoplifter" (emphasis ours). The statute, however, is not intended and cannot properly be used as a means of what would amount to hoodwinking those desiring to learn from official records the true status of such ownership interests. The unrecorded agreement, by its terms, was an unrecorded attempt to retain in SEE all benefits enjoyable by an assignee of the patents, as if those patents had not been assigned to its subsidiary, Stoplifter, while, at the same time, Stoplifter was identified to the public as the owner of the "entire right, title and interest" in those patents on the Patent and Trademark Office records. In such a situation, 35 U.S.C. § 261 operates to protect one who acquires those patents for value without knowledge of the unrecorded agreement, and the district court therefore properly held the unrecorded agreement void against Whitaker, the creditor in the Chancery proceeding.
 
 
 33
 SEE says the district court erred in disregarding an affidavit and answers to interrogatories purporting to show that Whitaker knew of the unrecorded agreement, that those documents created a material factual issue on that point, and hence summary judgment was inappropriate. We disagree.
 
 
 34
 The district court's order reveals that the documents were not disregarded. On the contrary, they were considered and properly found insufficient to raise a factual issue. The affidavit was not made on personal knowledge, does not set forth facts admissable in evidence, and does not show the affiant as competent to testify. The interrogatories concerned Whitaker's knowledge of the SEE-3M agreement, not of the unrecorded SEE-Stoplifter agreement.
 
 
 35
 SEE argues that defects in the affidavit were waived by failure to object. Whitaker did not file a formal motion to strike. He did, however, twice argue that the affidavit was improper. Moreover, whatever may have been the sufficiency of Whitaker's objections, the district court may, on its own motion and without abuse of discretion, properly refuse to credit an affidavit clearly defective on its face. See Becker v. Koza, 53 F.R.D. 416, 419 (D.Neb.1971).
 
 CONCLUSION
 
 36
 There being no material fact issues, and no error of law below, the district court's grant of summary judgment to Whitaker is AFFIRMED and the case is REMANDED to the district court for consideration and determination of the demand for attorney's fees.[7]
 
 
 
 *
 Of the U. S. Court of Customs and Patent Appeals, sitting by designation
 
 
 [1]
 U. S. Letters Patent 3,631,442; 3,747,086; 3,754,226; 3,790,945; 3,820,103; and 3,820,104
 
 
 [2]
 At the time of the agreement, SEE was known as Electrochemical Laboratories, Inc. It is here referred to only as SEE
 
 
 [3]
 Though the agreement purports to grant an "exclusive" license, the retention by SEE of a right to "make, use, and sell" rendered the license to 3M non-exclusive. The repeated misuse of words and phrases that have acquired term-of-art status in the field of patent law clutters the briefs and the entire record in this case
 
 
 [4]
 That order was not appealed from. Though LPS was involved only in the dismissed infringement action, and is not an appellant here, it is listed on the briefs as an appellant
 
 
 [5]
 SEE cites Anderson v. Anderson, Mun.Ct. 1961, 30 Misc.2d 1034, 215 N.Y.2d 155, in which New York courts refused full faith and credit to a Pennsylvania child support judgment entered without notice to a husband who had earlier appeared. That refusal, however, was based on an absence of jurisdiction in the Pennsylvania court
 
 
 [6]
 On the record here, SEE made no effort at any time, before or after the deadline, to file a claim in the Chancery court, but totally ignored the chancery proceeding itself. It collaterally attacked the judgment only after being sued, claiming fraud in its counterclaim filed March 20, 1978 (three months before the deadline to object to the judgment) in the now dismissed infringement suit, and in an affidavit filed in the present case on February 27, 1979
 
 
 [7]
 The district court has not entered its judgment on a separate document. Fed.R.Civ.P. 58. Because the parties agree that the district court's order disposed of all issues, except that of attorney's fees, the Clerk of the District Court is requested to enter the judgment below and to file a copy thereof in this court. See Wheeler v. American Home Products Corp., 582 F.2d 891 (5th Cir. 1977)