**MARUZEN INTERNATIONAL, CO., LTD., Plaintiff,**

v.

**BRIDGEPORT MERCHANDISE, INC., Hyman Products, Inc.; Cal Sternberg & Associates; Crest Industries Corp.; Mort Kapp d/b/a J & K Distributors and M.R. Goodlite; Fascinations Toys & Gifts Inc.; Lego Imports; Min Lurng Enterprises Co., U.S.A.; House of Zog, Inc.; Crown Import/Universal Specialties; Freund–Mayer & Co.; Crown Craft Products; Big Apple Enterprises; and Li'L Mort Sales, Inc., Defendants.**

**No. 90 Civ. 3531 (KTD).**

United States District Court, S.D. New York.

July 15, 1991.

Whitman & Ransom, New York City (John M. Newell, Steven G. Fauth, Monica J. Goodman, of counsel), for plaintiff.

Nims, Howes, Collison & Isner, New York City (William R. Hansen, Ronald J. McGaw, of counsel), Polster, Polster & Lucchesi, St. Louis, Mo. (Michael Kovac, Lionel L. Lucchesi, of counsel), for defendant Hyman Products, Inc.

Abelman, Frayne, Rezac & Schwab, New York City (Jeffrey A. Schwab, Nancy J. Mertzel, of counsel), Wigman & Cohen, P.C., Arlington, Va. (Herbert Cohen, of counsel), for defendants Fascinations Toys & Gifts, Inc. and Kay–Bee Toy & Hobby Shops, Inc.

### MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiff Maruzen International Co., Ltd. ("Maruzen") brings this action against, *inter alia*, defendants Hyman Products, Inc. ("Hyman"), Fascinations Toys Gifts Inc. ("Fascinations"), and Kay–Bee Toy Hobby Shops, Inc. ("Kay–Bee") for violations of copyright, trademark, trade dress, unfair competition, and other rights in connection with a product known as the "Art Bank." [1] The Art Bank was apparently created by a Japanese company, Tenyo Co., Ltd. ("Tenyo"), that purportedly assigned its rights to Maruzen's Japanese parent company ("Maruzen Japan"). Maruzen was eventually assigned rights in the product for the United States market. On October 10, 1990, I

---

1. This product consists of a plastic cube, and with use of mirrors, it gives the illusion of being completely hollow in the center, such that if a coin were dropped into the bank, the expectation would be to immediately see the coin dropping into the center of the bank. However, when a coin is dropped into the bank, it is lost to the illusion and looks as if it has disappeared into thin air.

enjoined Hyman from the "sale or distribution or attempted sale or distribution of its Bank product or any version thereof...." Its Bank was called "the Magic Bank." Soon thereafter, Hyman apparently made certain shipments of its Magic Bank and Maruzen moved by Order to Show Cause to hold Hyman in contempt of court. After a hearing conducted on January 25, 1991, I ordered that Hyman be fined $100,000.00 for its contempt in shipping the Magic Bank after Hyman had previously been preliminarily enjoined.

A Patent ("953 Patent") was obtained for the Art Bank on November 6, 1990 in Tenyo's name. Shigeru Sugawara, a Tenyo employee, designed and created the first version of the Art Bank. Maruzen then moved to amend its complaint, adding a patent infringement claim.[2] On February 14, 1991, I granted Maruzen's motion for leave to amend, but denied any motion for a preliminary injunction as against Fascinations and held in abeyance its cross-motion to dismiss. Hyman cross-moves pursuant to Fed.R.Civ.P. 12(b)(5) and 12(b)(2) to dismiss the complaint for insufficiency of service of process and lack of personal jurisdiction. In addition, Hyman moves for reconsideration of the contempt order, seeking a stay of execution pending reconsideration or appeal of the contempt order. Fascinations withdraws its original motion to dismiss and by a substituted motion, Fascinations and Kay–Bee now jointly move pursuant to Fed.R.Civ.P. 12(b)(7) and 19 for an order dismissing the amended complaint because of failure to join an indispensable party.

## STATEMENTS OF FACT

Maruzen is the United States subsidiary of Maruzen Co, Ltd. ("Maruzen Japan") a Japanese publisher and retailer of stationary products and gift items. As part of its retail activities, Maruzen Japan searches for novel stationary and gift products. In October 1989, it entered into an agreement with Tenyo, which had designed the Art Bank, and was prepared to manufacture the Art Bank for distribution by Maruzen in the United States. Mizutani Declaration ("Decl.") ¶ 4. Maruzen Japan thereupon sublicensed its United States rights in the Art Bank to its subsidiary Maruzen to sell and protect the product in the United States.

Since entering the United States market with the Art Bank, Maruzen has undertaken to register its intellectual property rights in all of its versions of and improvements in the Art Bank. All of Tenyo's rights in the copyright and trademark in the United States market were assigned exclusively to Maruzen. Even though Tenyo had already applied for patent and trademark protection, Maruzen independently applied for registration for the illustrations and sculptures in the interior of the Art Bank ("the designs").

In February 1990, Maruzen discovered that defendant Hyman was soliciting orders for a coin box similar to the Art Bank, which was called the "Magic Bank." Apparently, Hyman was attending various gift conventions in the United States and soliciting orders for its Magic Bank. Using the Art Bank as a sample, Hyman has sold its Magic Bank claiming origination of the Art Bank. On March 6, 1990, Maruzen obtained a copyright registration VA 388421. Maruzen has since registered other copyrights and trademarks for the Art Bank. Sometime later, Maruzen discovered that Fascinations created a toy bank known as the "Mystery Bank." The Mystery Bank was modelled after Hyman's Magic Bank, resembling Maruzen's Art Bank design.

## DISCUSSION

▆ Fascinations and Kay–Bee jointly assert that Maruzen lacks standing to sue

---

**2.** Tenyo Co., Ltd. ("Tenyo"), designers of the Art Bank for distribution by Maruzen's Japanese parent has filed patent applications for the Art Bank in Japan, Spain, Taiwan, Britain, Korea, Australia, Canada, and the United States. The rights flowing from these applications have been assigned exclusively to Maruzen. Maruzen has received a Notice of Allowance of the United States patent application, a preliminary determination that the patent application probably will be granted.

on behalf of the '953 Patent because of its failure to show that it is Tenyo's assignee of rights in the United States. Specifically, they claim that Maruzen's First Amended Complaint fails to contain any allegation that Maruzen had acquired all of the asserted intellectual property rights from Maruzen Japan which in turn acquired those same rights from Tenyo. Specifically, Fascinations and Kay–Bee assert that the amended complaint does not include certain documents which purport a transfer of rights on October 1, 1989. Thus, Fascinations and Kay–Bee contend that Maruzen is not the sole owner of these rights but merely the exclusive distributor of the Art Bank product for Tenyo, the alleged creator and manufacturer of that product. Amended Complaint ¶ 5.

Status as an assignee or patentee is a crucial prerequisite to bringing suit on infringement grounds. "In order to sue for infringement under 35 U.S.C. § 281, the plaintiff must be the owner of the patents, i.e., the patentee or assignee of the patent." *Afros S.p.A. v. Krauss–Maffei Corp.*, 671 F.Supp. 1402, 1444 (D.Del.1987), *aff'd without opinion*, 848 F.2d 1244 (Fed. Cir.1988). Annexed to Maruzen's reply papers, are certain letters apparently originating from Tenyo and Maruzen Japan and purporting to transfer rights in the Art Bank to Maruzen. Maruzen's Reply Declarations and Exhibits in Support of Maruzen's Motion for a Preliminary Injunction and to Amend the Complaint ("Maruzen's Reply"), Exh. B. Specifically, the Tenyo letter states:

> Tenyo Co., Ltd. is the owner worldwide of all of the interectual (sic) property rights, including copyrights associated with the Art Bank product, which was first made on April 1, 1989. In return for valuable consideration, receipt of which is hereby acknowledged, Tenyo Co., Ltd. hereby assigns and transfers to Maruzen Co., Ltd. [Maruzen Japan], all of Tenyo Co., Ltd.'s intellectual property interests for the Art Bank product in the

United States of America, including any patent, trademark. . . . This assignment is effective as of October 1, 1989.

In Addition, Maruzen Japan, by letter substantially tracking the above letter's language, assigned all of its rights in the Art Bank to Maruzen with regard to the United States market.[3]

"Agreements transferring patent rights must be either assignments or licenses. Whether an agreement be one or the other is governed by its substance, not its label." *CMS Industries, Inc. v. L.P.S. International, Ltd.*, 643 F.2d 289, 294 (5th Cir. 1981) (citing *Waterman v. Mackenzie*, 138 U.S. 252, 255, 11 S.Ct. 334, 335, 34 L.Ed. 923 (1891)). "Where an agreement effectively transfers the entire bundle of rights residing in a patent, that agreement is an assignment." *CMS Industries, Inc. v. L.P.S. International, Ltd.*, 643 F.2d at 294 (citing *Etherington v. Hardee*, 290 F.2d 28, 29 (5th Cir.1961)). Even Fascinations and Kay–Bee admit that an assignee of a patent is considered to be a successor in title to ownership of the patent, and may sue independently without being required to join his assignor as an indispensable party under Fed.R.Civ.P. 19.

Maruzen is the exclusive licensee of the Tenyo novelty bank product. Although Tenyo is the originator, creator, developer, and manufacturer of the Art Bank, it has assigned to Maruzen all United States intellectual property rights in the Art Bank. Amended Complaint ¶ 6. The letters annexed to Maruzen's reply papers are indicative of an effective assignment of patent, trademark, and copyrights in the Art Bank which were ultimately assigned from Tenyo to Maruzen Japan, and then from Maruzen Japan to its domestic subsidiary Maruzen for the United States market. *See* Koyanagi Decl.; Maruzen's Reply, Exh. B. Because the United States market is the only market relevant to this action, there is no need to join Tenyo or Maruzen Japan. Neither party appears necessary to the ac-

---

**3.** The consideration of material beyond that contained in the pleadings does not convert a motion under Fed.R.Civ.P. 12(b)(2) into a motion for summary judgment. Only a motion under Fed.R.Civ.P. 12(b)(6) is converted into one for summary judgment by such a consideration. *See* 2A Moore's Federal Practice ¶ 12.-07[2.–2], at 12–57 (2d Ed.1991).

tion at bar[4] and Maruzen has adduced sufficient information to withstand motions to dismiss on the basis of its purported failure to join Tenyo and Maruzen Japan as necessary parties.[5]

■ Next, Hyman requests that I dismiss this case, claiming that service of process, pursuant to Fed.R.Civ.P. 4(d)(3), was deficient, thus constituting a violation of due process. While due process underlies the mechanism set up by Fed.R.Civ.P. 4, requiring that sufficient notice be given "in such a manner that there can be little doubt that the party has actual notice of the claims in order to appear and defend," Rule 4 is to be construed liberally with regard to service of process. *Durant and Isaacs v. Traditional Investments, Ltd.*, No. 88–9048, 1990 WL 33611 (S.D.N.Y. March 22, 1990) (LEXIS, Genfed library, Courts file) (citing *S.E.C. v. Tome*, 833 F.2d 1086, 1092 (2d Cir.1987)). Thus, when a defendant receives actual notice of a lawsuit brought against him, technical imperfections with service will rarely invalidate the service. *Durant and Isaacs v. Traditional Investments, Ltd.*, No. 88–9048. 1990 WL 33611 (S.D.N.Y. March 22, 1990) (LEXIS, Genfed library, Courts file) (citing Wright & Miller, Federal Practice and Procedure, @ 1088, at 3132, n. 2.).

Fed R.Civ.P. 4(d)(3) allows service of process on corporations through their "managing or general agents." This requirement has been loosely interpreted, requiring merely that service constitute some assurance that the corporation is apprised of its status as a named defendant in a law suit. *Manchester Modes, Inc. v. Lilli Ann Corp.*, 306 F.Supp. 622, 626 (S.D.N.Y.1969).

Maruzen served Hyman by delivering the summons and a copy of the complaint to Terrence P. Long, Hyman's National Sales Manager. According to Hyman, Long is neither a managing agent nor someone vested with powers to bind the corporation and thus the corporation, having been improperly served, never received sufficient notice of the suit against it, regardless that Long accepted service without objection.

Long's responsibilities include attending national and local trade shows. Long Affid. ¶ 3.; Daugherty Affid. ¶ 4. In addition, as National Sales Manager, Long is responsible for communication with and training of independent sales representatives with respect to all of Hyman's products. Long Affid. ¶¶ 2, 3. Certainly, Long's position as National Sales Manager was reasonably considered by Maruzen to be a responsible enough one, impliedly assuring that Long as an officer of the corporation would provide the corporation with proper notice of the pending suit, notwithstanding the fact that Long could not "bind the corporation" in contract or otherwise. *See Durant and Isaacs v. Traditional Investments, Ltd.*, No. 88–9048, 1990 WL 33611 (S.D.N.Y. March 22, 1990) (LEXIS, Genfed library, Courts file) (generally, service is sufficient when made upon an individual who stands in such a position as to render it fair, reasonable, and just to imply the authority on his part to receive service) (citing *Montclair Electronics, Inc. v. Electra/Midland Corp.*, 326 F.Supp. 839, 842 (S.D.N.Y.1971)).

Indeed,

Rule 4 *does not require that service be made solely on a restricted class of formally titled officials*, but rather permits it to be made upon a representative so integrated with the organization that he will know what to do with the papers. Generally, service is sufficient when made upon an individual who stands in such a position as to render it fair, reasonable and just to imply the authority on his part to receive service.

---

4. Nonetheless, on July 10, 1991, Magistrate Judge Francis, *inter alia,* granted Maruzen leave to join Tenyo and Maruzen Japan as plaintiff. I will not disturb that order should Maruzen so choose to amend its complaint, accommodating Judge Francis' order.

5. There is no need for any further analysis whether Tenyo or Maruzen Japan may at some future time assert rights in the patent for the Art Bank for I find that information tending to show an effective assignment relieves me of the further burden. If rights are effectively assigned, the assignor retains no further rights to that which was assigned and thus has no stake to claim presently or in the future.

**160**

*Top Form Mills Inc. v. Sociedad Nationale Industria Applicazioni Viscosa*, 428 F.Supp. 1237 (S.D.N.Y.1977) (emphasis added). Relying on Long's status as a National Sales Manager, Maruzen reasonably assumed that Long had the implied authority to receive service. Moreover, Long reports directly to the Vice President for Sales. His direct and consistent contact with his superior bolsters the theory that the corporation was properly served for Long surely did or should have understood the import of his reporting the service of the summons to his superior, clearly the kind and type of officer of which Rule 4 speaks. Hyman concedes that Long understood that he should report to his superior with respect to his receipt of these obviously important documents. Accordingly, service upon Long sufficed to place Hyman on notice of the pending law suit here.

Hyman next contests the validity of personal jurisdiction over it because of its lack of contacts with New York, the forum state. Due process requires "minimum contacts" between a defendant and a forum State as a predicate for a court's valid assertion of jurisdiction over a non-domiciliary. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). New York's long-arm statute provides for jurisdiction over non-domiciliaries which transact business in New York, contract to supply goods or services in New York, or commit a tortious act within the state. N.Y.Civ.Prac.L. & R. § 302(a)(1) (McKinney 1990). Specifically, "a court may exercise personal jurisdiction over any non-domiciliary who in person or through an agent: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state."

Hyman maintained a booth and entered its toys and novelty products in a toy fair held in New York's Javits Center, apparently soliciting sales and conducting business such that its products would potentially enter New York's stream of commerce. Notwithstanding, even mere attendance, solicitation, and receipt of sales orders at a toys and gifts fair in New York demonstrates an expectation of sales to consumers and entrance into the stream of commerce in New York. Thus, it is fair to glean from Hyman's knowing placement of goods in New York's stream of commerce, that its "presence" in New York abundantly meets due process expectations and provides me a fair predicate to exercise personal jurisdiction over Hyman in this district. *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–98, 100 S.Ct. 559, 567–68, 62 L.Ed.2d 490 (1980) ("forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.")

For the foregoing reasons, Hyman's cross-motion, pursuant to Fed.R.Civ.P. 12(b)(5) and 12(b)(2) to dismiss the complaint for insufficiency of service of process and lack of personal jurisdiction, is denied. Hyman's motion for reconsideration of the contempt order is granted to the extent that the fine shall be reduced to an amount constituting Hyman's gross receipts for post-injunction sales of the Magic Bank. Fascinations withdrew its original motion to dismiss which is thus denied as moot. As for Fascinations' substituted motion to dismiss, submitted in conjunction with Kay–Bee and brought pursuant to Fed.R.Civ.P. 12(b)(7) and 19, that motion is denied as well. Maruzen is hereby ordered to submit, for the court's signature, an appropriate judgment against Hyman in accordance with the above reduction. In order to do so, Hyman must make available to plaintiff, its relevant books and records within ten days of the date of this order. Any failure by Hyman to do so will vitiate the reduction provided herein.

SO ORDERED.