5 F.3d 1502
 29 U.S.P.Q.2d 1450
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
W. Simon KATZ, Plaintiff-Appellant,
v.
LEAR SIEGLER, INC. and Smith & Wesson, Defendants-Appellees.
 No. 91-1094.
 United States Court of Appeals, Federal Circuit.
 July 12, 1993.
As Changed on Grant of Rehearing; Rehearing In Banc
Declined Sept. 29, 1993.
 
 Before NEWMAN, ARCHER, and RADER, Circuit Judges.
 ARCHER, Circuit Judge.
 
 
 1
 W. Simon Katz appeals from the order of the United States District Court for the District of Massachusetts, Civil Action No. 87-0495-F (Sep. 18, 1990), granting summary judgment to Lear Siegler, Inc. and Smith & Wesson Corp. (collectively LSI), and dismissing Katz's patent infringement suit for lack of standing. Katz also appeals from an order of the United States District Court for the Western District of New York, No. CIV-86-536E (Feb. 20, 1987), transferring the instant case to the District of Massachusetts for improper venue. We vacate the above orders and remand.[1]
 
 DISCUSSION
 I.
 
 2
 A. This case is a morass of facts which we describe only to the extent necessary for resolution of this appeal.[2] United States Patent No. 3,758,978 (the '978 patent) and United States Design Patent No. 230,400 (the '400 patent), relating to grips for handguns, were awarded to inventor Paris Theodore in 1973 and 1974 respectively. On June 15, 1978, Theodore and Armament Systems and Procedures, Inc. (ASP), a company then owned by Theodore, executed a document granting to ASP an exclusive license to make, use and sell devices covered by certain patents including the '978 and '400 patents, in return for which ASP agreed to pay to Theodore royalties (the exclusive license agreement). ASP was given a unilateral option to terminate the agreement upon 60 days notice to Theodore. On December 1, 1978, Theodore and ASP executed another document, labelled the "First Amendment to the Exclusive Patent License Agreement" (the first amendment), which stated that Theodore "hereby assigns to [ASP] his entire right, title and interest in" certain named patents including the '978 and '400 patents. The first amendment also granted to ASP the right and "sole discretion" to sue for infringement of the patents, including the right to keep all monies collected under the patents. Neither the original exclusive license agreement nor the first amendment was recorded in the Patent and Trademark Office (PTO). See 35 U.S.C. Sec. 261 (1988); 37 C.F.R. Secs. 1.331, 1.332.
 
 
 3
 After the first amendment was executed, ASP began manufacturing products which the parties agree were covered by the patents, generating sales in excess of $600,000. ASP also compiled a list of "Known Patent Infringers" but did not enforce the patents against them through litigation. On July 11, 1983, attorneys representing Theodore sent a letter to a post office box previously used by ASP purporting to rescind the Theodore-ASP agreement of June 1978 and ordering ASP to stop using the patents. ASP asserted that it never received the letter. ASP continued manufacturing pistols covered by the patents until Katz began suing ASP's customers for infringement.
 
 
 4
 At some point Katz became interested in the '978 and '400 patents. He avers that in anticipation of purchasing an assignment from Theodore, he made a search of the assignment records of the PTO, but found no record of prior assignments of any kind of the '978 or '400 patents. Thus, on April 30, 1985, for a recited consideration of one dollar and "other and good and valuable consideration," Theodore and Katz executed two documents assigning to Katz the "entire right, title and interest" in the '978 and '400 patents. One week later, on May 7, 1985, Theodore and Katz executed another agreement purporting to assign to Katz all rights in the Theodore-ASP exclusive license agreement, including the right to sue ASP. This agreement, however, did not mention the first amendment.
 
 
 5
 On May 10, 1985, Katz mailed a letter to ASP informing ASP that Katz was the new owner of the patents, that he was rescinding the exclusive license agreement because ASP was in breach, and that ASP should stop making and selling the patented inventions and pay to him royalties owed under the agreement. Katz acknowledges that he knew that ASP had "been engaged in the manufacture and sale of various products incorporating the inventions" and that no royalty payments had ever been made (despite the exclusive license). Katz then recorded in the PTO the assignment by Theodore to Katz of the '978 and '400 patents. ASP responded to Katz's letter requesting proof of ownership. In response, Katz advised ASP by letter to search the records of the PTO. In addition, Theodore sent a letter to ASP stating that Theodore had assigned his rights to Katz.
 
 
 6
 B. On June 3, 1986, Katz filed a pro se complaint in the United States District Court for the Western District of New York asserting infringement by Lear Siegler, Inc. of Katz's '978 patent. On June 27, 1986, Lear Siegler defaulted and Katz filed for entry of default. While in default, Lear Siegler filed motions to dismiss the case for lack of venue, or to transfer the proceedings to the United States District Court for the District of Massachusetts. Thereafter, on July 18, 1986, the district court entered default "nunc pro tunc" to June 27, 1986. On July 30, 1986, Lear Siegler moved to set aside the entry of default, and to reinstate its previous motions to dismiss for lack of venue or alternatively to transfer. On September 3, 1986, Lear Siegler filed another motion to dismiss, this one for failure to state a claim.
 
 
 7
 On September 15, 1986, without opinion, the district court granted Lear Siegler's motion to set aside the entry of default. On February 20, 1987, the district court ordered the action transferred to the District of Massachusetts. In doing so, the New York District Court rejected Katz's argument that Lear Siegler had waived its objection to venue by defaulting. The court held that waiver need not be found where an entry of default has been unconditionally set aside. The case thus was transferred.
 
 
 8
 On July 8, 1987, the Massachusetts District Court allowed the joinder of Smith & Wesson Corp. as a defendant (forming collectively LSI). On December 17, 1987, the district court allowed LSI to amend its answer and file a counterclaim for a declaratory judgment of invalidity and noninfringement of the '978 patent, and the '400 patent which theretofore had not been in suit. On December 2, 1988, the district court allowed the joinder of ASP as a defendant in LSI's counterclaim.
 
 
 9
 On February 21, 1989, LSI filed a motion for summary judgment, which ASP later joined, asserting that the '978 and '400 patents were invalid and not infringed, and that Katz had no standing to sue on them. The district court granted LSI's motion for summary judgment solely on the basis that Katz lacked standing, and did not decide the issues of validity and infringement. The district court then dismissed the remaining cross-claims,[3] and counterclaims, except for the counterclaim of invalidity by LSI against ASP. As to that counterclaim, the district court entered judgment against ASP finding that ASP had admitted the patents' invalidity.[4] This appeal followed.
 
 II.
 
 10
 A. The question of Katz's ownership of the patents in this case is one of his standing to sue. As such, Katz's ownership is a prerequisite to the subject matter jurisdiction of the district court. See Lujan v. Defenders of Wildlife, 112 S.Ct. 2130, 2136 (1992). "The party invoking federal jurisdiction bears the burden of establishing [the] elements" of standing. Id. Thus in this case, where LSI moved for summary judgment of no standing, the underlying substantive burden of persuasion is on the nonmoving party, Katz.
 
 
 11
 Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).
 
 
 12
 The movant bears the burden of demonstrating absence of all genuine issues of material fact[.] [T]he district court must view the evidence in a light most favorable to the nonmovant and draw all reasonable inferences in its favor, and must resolve all doubt over factual issues in favor of the [nonmovant].
 
 
 13
 SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d 1107, 1116, 227 USPQ 577, 581-82 (Fed.Cir.1985) (in banc) (citations omitted). The movant may "affirmatively demonstrate that there is no evidence in the record to support a judgment for the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 331, 332 (1986) (Brennan, J., dissenting). That being done, the nonmoving party "can no longer rest on ... 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts.' " Lujan, 112 S.Ct. at 2137. This evidence must be such that a reasonable factfinder could find in favor of the nonmovant in view of its burden of persuasion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). We review the grant of summary judgment de novo. Vas-Cath Inc. v. Mahurkar, 935 F.2d 1555, 1560, 19 USPQ2d 1111, 1114 (Fed.Cir.1991).
 
 
 14
 The district court granted summary judgment that Katz has no standing to sue LSI, holding that Theodore assigned his patent rights in writing to ASP, placing legal and equitable title to the patents in ASP, prior to assigning the patent rights to Katz, and that Katz could not rely on 35 U.S.C. Sec. 261 to void the unrecorded Theodore-ASP assignment because, as a matter of law, Katz was not without notice of it. As a result, ASP not Katz has title to the patents.
 
 
 15
 Katz argues that the district court erred in granting summary judgment because a genuine issue of fact exists first as to whether Katz had notice of the earlier assignment within the meaning of 35 U.S.C. Sec. 261.[5] Katz relies solely on the following two factual assertions made in his affidavit: first, Katz swears he had no actual notice of the first amendment to the Theodore-ASP exclusive license agreement; and second, he swears that in anticipation of purchasing the patents at issue, he searched the records of the PTO and found nothing about the patents.
 
 
 16
 Accepting these assertions as fact, as we must on summary judgment, we are nonetheless convinced that the district court correctly concluded under all of the undisputed facts that Katz is chargeable as a matter of law with constructive or inquiry notice of the previous assignment via the first amendment.
 
 
 17
 The "notice" of 35 U.S.C. Sec. 261, which derives from common law and equity principles, is broader than actual notice, and includes constructive and inquiry notice. See FilmTec Corp. v. Allied-Signal Inc., 939 F.2d 1568, 1574, 19 USPQ2d 1508, 1512-13 (Fed.Cir.1991); see also Taylor Engines, Inc. v. All Steel Engines, Inc., 192 F.2d 171, 174, 92 USPQ 35, 37 (9th Cir.1951) (the "same notice" which prevents cutting off equitable rights precludes reliance on the recordation statute); W. Rogers, Rogers on Patents 190 (1914). Thus, Katz's first assertion of fact--that he did not actually know of the first amendment--even if true, does not in itself bring him within the protection of 35 U.S.C. Sec. 261 so as to avoid judgment as a matter of law.
 
 
 18
 The district court did not rest its determination on actual notice. The court considered the dispositive issue whether Katz is chargeable as a matter of law with constructive or inquiry notice. Katz asserts one fact to avoid such a determination--that he searched the records of the PTO and they were silent. Katz argues that "[s]ince it is well settled that 35 U.S.C. Sec. 261 establishes a recording system ... Katz [by searching the records in the PTO] did exactly what was required of him in his exercise of ordinary care under the circumstances, and absent some indication, in the Patent Office records, that Theodore did not possess clear title to the patents, Katz was not obligated to make further inquiry."
 
 
 19
 We do not agree with Katz's narrow legal definition of constructive notice. Constructive notice is not limited to the notice provided by a recording system--here 35 U.S.C. Sec. 261. Rather,
 
 
 20
 constructive notice may be based on any fact within the knowledge, or means of knowledge, of the purchaser of the unrecorded assignment, and which fact should logically lead him, upon inquiry, to a knowledge of the existence and purport of that assignment itself.
 
 
 21
 A. Walker, Walker on Patents Sec. 281 (4th ed. 1904). This includes the fact that the subsequent assignee knew at the time of purchase, yet did not inquire at all into the fact, that the prior assignee 91-1094 was making, using, or selling specimens of the invention covered by the patent involved. Id.;see CMS Indus., Inc. v. L.P.S. Int'l, Ltd., 643 F.2d 289, 294, 217 USPQ 20, 23 (5th Cir.1981) (Markey, C.J., sitting by designation) ("years of manufacturing and selling products embodying the invention" may indicate an ownership interest). "A person must use ordinary thoughtfulness and make accessible inquiries. If he does not, and avoids the inquiry, he is chargeable with the knowledge which ordinary diligence would have elicited, and cannot be considered a bona fide purchaser." United States v. Orozco-Prada, 636 F.Supp. 1537, 1543 (S.D.N.Y.1986), aff'd, 847 F.2d 836 (2d Cir.1988) (table).
 
 
 22
 This is an extreme case. Under the undisputed facts of this case, we are convinced that the district court properly concluded that Katz should be held to inquiry notice. It is undisputed that Theodore first executed an exclusive license with ASP of the '978 and '400 patents, and then six months later assigned to ASP the patents via the first amendment; that Theodore subsequently assigned to Katz the same patents; that Katz is experienced in the business of acquisition and enforcement of patents and his purpose in acquiring the patents at issue was to enforce them against purported infringers by litigation or threat of litigation; that Katz actually knew of the Theodore-ASP exclusive license agreement; that Katz actually knew that ASP had been manufacturing and selling products for some time which were covered by the '978 and '400 patents, and that ASP never paid any royalties as required by the exclusive license agreement (but not by the first amendment); that Katz had at least twice contacted ASP regarding the patents at issue; and that Katz had a continuing working relationship with Theodore. Conspicuously missing from Katz's defense of the summary judgment motion is any factual assertion in support of his conclusory statement that he was unaware of the first amendment. No facts relating to the negotiations and purchase of Theodore's patents were presented, nor did Katz indicate whether he asked Theodore, or that Theodore made any representations to him, about the patents or about the extent of Theodore's contractual relationship with ASP. Also missing in Katz's response to the summary judgment motion are any facts regarding his knowledge of the extent of ASP's dealings with Theodore or whether Katz made any inquiry from ASP. Katz's argument essentially is that even under circumstances such as those present in this case no obvious questions had to be asked. We however believe, as did the district court, that a person in Katz's circumstances exercising ordinary care should have asked these minimal, obvious questions. Willful or careless blindness is not the sort of lack of notice that section 261 contemplates. The evidence of record therefore contains no factual dispute to preclude a determination as a matter of law that Katz should be held to constructive notice, based on a duty of inquiry, of the prior assignment. Therefore the district court did not err in holding that LSI is entitled to summary judgment on that issue.
 
 
 23
 Katz also argues that there is a genuine issue of fact as to whether ASP breached the first amendment by failing to enforce the patents against alleged infringers, which breach thereby would render the assignment ineffective and validate Theodore's later assignment to Katz. We disagree with Katz. As the district court correctly concluded after analyzing state contract law, even if ASP was in breach of the agreement,[6] Theodore's proper course of conduct would have been an action for breach of contract or recision. There would be no automatic termination of the assignment. As to Theodore's purported termination of the exclusive license agreement, the first amendment gave ASP alone a right of termination; thus, Theodore's attempted unilateral termination was not within the contract and was of no legal effect. Consequently, as a matter of law, the asserted conduct of Theodore and ASP even if accepted as true could not have voided the first amendment so as to validate Theodore's subsequent assignment to Katz.
 
 
 24
 Although we agree with the district court that Katz may not rely on 35 U.S.C. Sec. 261, and that neither Theodore's purported termination of the assignment nor ASP's failure to enforce the patent could have validated Theodore's subsequent assignment to Katz, we must nevertheless vacate the grant of summary judgment. In the district court, Katz disputed the validity of the Theodore-ASP assignment. Katz asserted that the first amendment was void for lack of consideration. According to Katz, Theodore relinquished his right to royalties in the first amendment, had no right to require enforcement of the patents, obtained no entitlement to monies collected under the patents by ASP, and furthermore was paid no money in return for the first amendment. The district court did not consider the question whether the first amendment lacked consideration and we will not decide that question as a matter of law ab initio. We therefore leave it for remand.[7]
 
 
 25
 As previously noted, questions regarding the Theodore-ASP assignment implicate Katz's standing and go to the subject matter jurisdiction of the district court. Since these questions are unrelated to the merits of the Katz-LSI-ASP infringement suit, the district court may resolve them through a preliminary hearing, if these questions necessitate findings of fact, and need not leave them for full trial. See, e.g., Barrett Computer Servs., Inc. v. PDA, Inc., 884 F.2d 214, 220 (5th Cir.1989); see 13A Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction Sec. 3531.15, at 99 (2d ed. 1984).
 
 
 26
 B. Having determined that remand is appropriate, the next issue is where the remand should go. After LSI defaulted[8] and the district court entered default, but prior to entry of judgment on the default, the New York District Court granted LSI's motion to set aside the entry of default and entertained LSI's motion to dismiss for improper venue or to transfer. The district court then analyzed the question of venue and found that venue was not properly laid in New York because LSI did not reside in New York and Katz did not show that LSI either committed acts of infringement in New York or that LSI had a regular and established place of business in New York. See 28 U.S.C. Sec. 1400(b) (1988). Rather than dismissing the action for improper venue, the district court transferred it to the District of Massachusetts. See 28 U.S.C. Sec. 1406(a) (1988).[9]
 
 
 27
 Katz does not challenge the substance of the venue determination. Instead Katz argues that LSI waived objection to venue by defaulting, and that such objection was not revived when the district court set aside the default. LSI responds, and the district court held, that no authority is inconsistent with allowing a party as a matter of course to challenge venue after the party has defaulted and the default has been set aside.
 
 
 28
 In Commercial Casualty Insurance Co. v. Consolidated Stone Co., 278 U.S. 177 (1929), the Supreme Court held that a defendant cannot seek to vacate a default judgment on the ground that venue was improper because venue, merely a personal privilege of the defendant, is waived upon default. Per the Court, the privilege of venue "must be 'seasonably' asserted; else it is waived." Id. at 179. The Court continued:
 
 
 29
 [Venue] must be asserted at latest before the expiration of the period allotted for entering a general appearance and challenging the merits.... To hold that such a privilege may be retained until after the suit has reached the stage for dealing with the merits and then be asserted would be in our opinion subversive of orderly procedure and make for harmful delay and confusion.
 
 
 30
 Id. at 179-80. Although this decision antedated the current Federal Rules of Civil Procedure, the Court has reiterated more recently that a "defendant, properly served with process by a court having subject matter jurisdiction, waives venue by failing seasonably to assert it, or even simply by making default." Hoffman v. Blaski, 363 U.S. 335, 343 (1960) (citing Commercial Ins. Co., 277 U.S. at 179-80); see also Industrial Addition Assoc. v. Commissioner of Internal Revenue, 323 U.S. 310, 313-14 (1945); Freeman v. Bee Machine Co., 319 U.S. 448, 453 (1943); Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 167-68 (1939). Thus it is well established that "[v]enue is waived by a defendant who defaults." 15 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction Sec. 3829 (2d ed. 1986).
 
 
 31
 The Federal Rules of Civil Procedure are consonant with the above authority. Rule 12(h)(1) provides: "A defense of ... improper venue ... is waived ... if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted ... to be made as a matter of course." And Rule 12(a) fixes the time period in which the defendant is required to respond, in this case, within 20 days after the service of the summons and complaint.
 
 
 32
 It is undisputed that LSI did not act within the 20 days provided for in Rule 12(a). Rather, LSI first responded by simply objecting to venue after the expiration of its period to respond--i.e., while it was in default, see Fed.R.Civ.P. 55(a). Then, after default had been entered, LSI moved to set aside the default. LSI finally responded on the merits with a motion to dismiss for failure to state a claim over two months after defaulting and over a month after entry of default. The cases and rules make clear that in such circumstances LSI waived its objection to venue.
 
 
 33
 LSI argues that the setting aside of the default per se revived its ability to object to venue. We disagree. Under Rule 55(c), entry of default may be set aside for good cause shown and judgment of default, if it may be entered at all, see Rule 55(b), may be set aside in accordance with Rule 60. Neither Rule 55 nor Rule 60, however, expressly revives a waived objection to venue. As stated succinctly by the United States District Court for the Southern District of Texas, "The fact that a court has allowed a party in default to proceed in the suit and answer the complaint does not automatically put the defaulting party in the position of one who is making a timely response to a complaint." Bavouset v. Shaw's of San Francisco, 43 F.R.D. 296, 299 (S.D.Tex.1967). This is as well the clear import of Rule 12(h) and the Supreme Court cases cited above.
 
 
 34
 Indeed, the Western District of New York has itself strictly applied the waiver rule in an analogous context. In Totalplan Corp. of Am. v. Lure Camera Ltd., 613 F.Supp. 451 (W.D.N.Y.1985), although the defendants had defaulted, the court refused to enter the default and permitted the defendants to continue on the merits with motions to dismiss for failure to state a claim. Yet the court held that these defendants had waived their objection to venue:
 
 
 35
 [A]n assertion of ... lack of proper venue is waived if not made prior to the time when the proponent is required to appear in response to the pleading sought to be challenged, in this case within twenty days of the service of the Summonses and Complaints as provided by rule 12(b), as the plain wording of rule 12(h)(1) indicates.
 
 
 36
 Id. at 456. Accordingly, we conclude that in this case LSI waived its objection to venue, and the New York District Court erred in transferring the case under 28 U.S.C. Sec. 1406(a) for improper venue.
 
 
 37
 On appeal, LSI does not primarily argue that it was entitled to object to venue. Rather, in its brief, LSI stresses that it moved alternatively in the district court to transfer the case under 28 U.S.C. Sec. 1404(a) (1988) for the "convenience of parties and witnesses, in the interest of justice."[10] Citing the district court's opinion, LSI states that "the New York district court refused to grant LSI's motion ... to dismiss this action for lack of venue but did grant LSI's alternative motion to transfer the action under Sec. 1404(a) to the Massachusetts district court." (Br. for Appellees LSI at 14.) LSI then argues that Katz "bases his appeal on a false premise--that the New York district court granted LSI's motion to transfer under 28 U.S.C. Sec. 1406.... The New York district court took no such action, granting instead LSI's alternative motion to transfer under Sec. 1404(a)," (id. at 28 (emphases in the original)), a transfer which could be made notwithstanding a waiver of venue.
 
 
 38
 Contrary to what LSI asserts, it is absolutely clear that the district court transferred this case under 28 U.S.C. Sec. 1406(a) for improper venue. In its opinion, the New York District Court rejected the arguments that venue in the Western District of New York was proper or that improper venue had been waived, and stated clearly:
 
 
 39
 This action for patent infringement has been challenged on the ground that venue in this district is improper. The defendant moves for dismissal or, in the alternative, for transfer of the action to the District of Massachusetts.
 
 
 40
 ....
 
 
 41
 Though venue does not exist in the Western District of New York, this Court is constrained not to dismiss the instant case but to transfer it to a district where venue is appropriate. [Emphasis added.]
 
 
 42
 Not once in its five page opinion analyzing why venue was improper in New York did the district court even mention the word, let alone analyze the factor required under section 1404(a) for transfer of, "convenience." Furthermore, the express finding by the district court that venue was improper is inconsistent with a transfer under section 1404(a) because that section applies to a transfer from a proper venue. "If venue is improper, transfer, if at all, must be under Sec. 1406(a)." 15 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction Sec. 3844, at 332 (2d ed. 1986) (emphasis added). We find this aspect of LSI's statement of the case and argument at best uninformed and incorrect, and at worst a misrepresentation of the record below. We therefore reject LSI's argument that the district court transferred this case properly under 28 U.S.C. Sec. 1404(a).
 
 
 43
 Accordingly, the orders of the United States District Court for the District of Massachusetts granting LSI summary judgment and of the United States District Court for the Western District of New York transferring the case are vacated, and the case is remanded to the District of Massachusetts with instructions to return the case to the Western District of New York for further proceedings consistent with this opinion.
 
 COSTS
 
 44
 Costs are awarded to Katz.
 
 ORDER
 
 45
 Sept. 29, 1993.
 
 
 46
 A combined petition for rehearing and suggestion for rehearing in banc having been filed by the APPELLANT, and a response thereto having been invited by the court and filed by the APPELLEE, and the petition for rehearing having been referred to the panel that heard the appeal, and thereafter the suggestion for rehearing in banc and response having been rererred to the circuit judges who are in regular active service,
 
 UPON CONSIDERATION THEREOF, it is
 
 47
 ORDERED that the petition for rehearing be, and the same hereby is, GRANTED to the extent that the following language change is made to the opinion:
 
 
 48
 and it is further
 
 
 49
 ORDERED that the suggestion for rehearing in banc be, and the same hereby is, DECLINED.
 
 
 50
 The mandate of the court will issue on October 20, 1993.
 
 
 
 [1]
 In addition, Katz appeals from the November 19, 1990 supplemental order of the Massachusetts District Court (1) entering judgment in favor of LSI on LSI's counterclaim against Armament Systems and Procedures, Inc. (ASP); and (2) denying Katz's request for sanctions under Rule 11 of the Federal Rules of Civil Procedure. As to the former, the district court by virtue of ASP's admissions declared the two patents here at issue "invalid, void and unenforceable," and not infringed. Because this judgment cannot adversely affect Katz if it is determined that Katz owns the patents at issue, and alternatively because Katz would have no rights to assert if it is determined that ASP owns the patents at issue, we dismiss this aspect of Katz's appeal for lack of standing. See 13 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction Secs. 3531.4, 3531.9 (2d ed. 1984). As to sanctions, Katz asserts that LSI must be sanctioned for failing to affirmatively withdraw its motion to strike Katz's notice of appeal after this court decided that LSI's motion was improper. Whether or not sanctions should have been awarded in these circumstances was a discretionary matter for the district court, which we will not overturn on appeal
 
 
 [2]
 See Katz v. Lear Siegler, Inc., 909 F.2d 1459, 15 USPQ2d 1554 (Fed.Cir.1990) (discussing the prior procedural history of the instant case)
 
 
 [3]
 As far as we can tell from the materials presented to us in this appeal, ASP asserted a cross-claim against Katz for, inter alia, invalidity of the '978 and '400 patents
 
 
 [4]
 In its answer to LSI's counterclaim, ASP admitted the invalidity of the '978 and '400 patents. Later, however, the district court granted Katz's motion to strike these portions of ASP's answer. However, the district court found that ASP also admitted invalidity of the patents when it joined LSI's summary judgment motion against Katz. We express no view as to the propriety of these procedures. See 13 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction Sec. 3530, at 316 (2d ed. 1984)
 
 
 [5]
 35 U.S.C. Sec. 261 provides in pertinent part:
 An assignment ... shall be void as against any subsequent purchaser ... for a valuable consideration, without notice, unless it is recorded in the Patent and Trademark Office within three months from its date or prior to the date of such subsequent purchase....
 
 
 [6]
 We note that the first amendment gave ASP the "sole discretion" to enforce the patent
 
 
 [7]
 Katz also asserts that there was fraud in the execution of the first amendment, thereby rendering it void ab initio. Although Katz's line of argument is difficult to discern, Katz appears to say that, under the first amendment, ASP had an implied obligation to act in good faith to enforce the patents and that ASP defrauded Theodore in executing the agreement because ASP never intended to enforce the patents. Moreover this argument appears to have been made to the district court, although it was not addressed in the district court's opinion. Rather than consider this argument on appeal, we leave it for the district court on remand should Katz again make it
 
 
 [8]
 We note that Smith & Wesson, a division of Lear Siegler, was joined as a party defendant after the case had been transferred for improper venue. However, in arguing the venue issue on appeal, the appellees refer to themselves collectively as LSI and do not argue that our decision might have an impact on Lear Siegler different from that on Smith & Wesson. We therefore adopt their designation and discuss and treat Lear Siegler and Smith & Wesson collectively
 
 
 [9]
 28 U.S.C. Sec. 1406 provides for a cure or waiver of defects:
 (a) The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.
 (b) Nothing in this chapter shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue.
 The parties do not dispute jurisdiction or venue in the District of Massachusetts.
 
 
 [10]
 28 U.S.C. Sec. 1404(a) provides for a change of venue:
 For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.